**Leisa Carol FOX, a minor, by and through her father and next friend, Floyd Fox, Plaintiff in Error,**

v.

**NATIONAL SAVINGS INSURANCE COM-PANY, an Oklahoma Corporation, Defendant in Error.**

**No. 41238.**

Supreme Court of Oklahoma.

Jan. 31, 1967.

Jake Hunt, Oklahoma City, for plaintiff in error.

Duvall, Head, McKinney & Travis, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

Plaintiff in error, Leisa Carol Fox, through her father and next friend, hereinafter referred to as "plaintiff", suffered bodily injuries December 22, 1959, in an Oklahoma City automobile collision, involving a panel truck owned by one Joe Hayes and one Buford W. Holmes, associated together in an Oklahoma City carpet sales establishment, called "Carpet Corner". The truck was driven by Carpet Corner's employee, one Cecil Carroll Prater. A few days before that date, defendant in error had issued to Prater an insurance policy, which provided for public liability coverage up to $10,000.00, hereinafter more fully detailed.

On February 9, 1960, plaintiff filed an action to recover $100,000.00 in damages for her injuries, against both Prater and his employer, as defendants.

A firm of attorneys named "Butler, Rinehart & Morrison" were engaged to represent the defendant in said action, and, in the course of preparing for trial, this law

firm had a representative present at the taking of the depositions of Prater, Holmes and Hayes, on April 29, 1960.

Thereafter, the above named defense counsel addressed a letter, dated June 7, 1960, to the defendant in error herein, as follows:

"RE: Cecil C. Prater, Policy No. 8223
Effective 12/11/59 to 12/11/60
Your File No. A–208515

"National Savings Insurance Company
400 Commerce Exchange Building
Oklahoma City, Oklahoma

"Gentlemen:

"Please be advised that your insured, Mr. Cecil Prater, was the operator of a vehicle being used as a substitute for the vehicle described in the above captioned policy on December 22, 1959, and was involved in an accident occurring on North Drexel Street and the West Expressway. Mr. Prater, with his employers, is now defending a lawsuit brought by an injured person in said accident wherein damages are sought in the amount of $100,000.00. While this firm is presently defending the insured on behalf of the defendant being employed by the employers of our insured, it is entirely possible that judgment will be rendered in excess of any insurance coverage, thus resulting in favor of the employers. It is also possible that your policy would be primary coverage in this accident.

"Any information you desire we will be glad to provide on behalf of our client, Mr. Cecil Carroll Prater. * *."

Upon the subsequent trial of the above described damage action, plaintiff recovered a joint judgment against its defendants totalling $15,000.00, and $10,000.00 thereof was thereafter satisfied by payment to the limit of the public liability coverage prescribed in an insurance policy previously issued to Prater's above-named employer.

Thereafter, in January, 1961, plaintiff commenced the present action to recover her judgment's unsatisfied balance of $5,-000.00 against defendant in error, hereinafter referred to as "defendant", attaching to her petition a photostatic copy of the insurance policy said defendant had admittedly issued to Prater.

In its answer to plaintiff's petition, defendant pleaded several defenses, but the only one necessary to mention herein was set forth in paragraph (3) (a) as follows:

"(a) Cecil C. Prater failed and neglected to give the defendant, National Savings Insurance Company, any notice (written or otherwise) of the accident in which plaintiff was injured, for a period of approximately five months and sixteen days after its occurrence, and the giving of written notice of the accident as soon as practicable is, by the policy's terms, an express condition precedent upon which liability of the defendant company thereunder is predicated, with which Prater failed to comply. Defendant company further alternatively alleges that the failure of Cecil C. Prater to comply with the notice provisions of said policy materially prejudiced the company's rights and position thereunder.

At the trial before the court without a jury, it appeared that the policy sued on contains the following parts and provisions:

"The Company Agrees with the Insured, named in the declarations made a part hereof, in consideration of the payment of the premiums and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

"PART I—LIABILITY

"Coverage A—Bodily injury liability:
"Coverage B—Property Damage Liability:

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

"A. Bodily injury, sickness or disease, including death resulting therefrom, here-

inafter called "Bodily Injury", sustained by any person;

"B. Injury to or destruction of property, including loss of use thereof, hereinafter called "property damage": *arising out of the* ownership, maintenance or *use of* the owned automobile or *any non-owned automobile,* and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent, but the Company may make such investigation and settlement of any claim or suit as it deems expedient.

" * * *

"DAMAGES

(The conditions apply only to the parts noted)

" * * *

"3. Notice—All Parts

"In the event of an accident, occurrence or loss, *written notice* containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the Insured and all available witnesses *shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.*

" * * *

"6. Action Against Company. Part I.

*"No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy,* nor until the amount of the Insured's obligation to pay shall have been finally determined whether by judgment against the Insured after the actual trial or by written agreement of the Insured, the claimant and the Company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the Insured to determine the insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder. * * *." '(Emphasis added).

In support of its plea that Prater, the "named Insured" in the subject policy had not complied with its provisions concerning written notice, the defendant called as its witness its president and "only claims man", Glenn Davidson, who identified the above quoted letter (which was introduced as defendant's Exhibit No. 1) as having been received, June 8, 1960, at the office of the defendant, a small "mail order" insurance company, with an office in Oklahoma City's Commerce Exchange Building. Davidson further testified, among other things, that said letter was the "first notice" he had ever received of the "accident in which Prater was involved or any law suit which he had been sued on."

Buford Holmes, who owned Carpet Corner, or a major interest therein, testified that at the time the collision occurred, Prater, who was a carpet installer for Carpet Corner, was driving a panel truck, belonging to said establishment, from a job he and his crew had been doing, en route to the witness's home, where he was to "pick up" his own automobile which the witness had borrowed, and had been using for two days. Holmes also testified that he went to the scene of the collision, apparently soon after it occurred; that he was present when it was discussed with one Harlan Smith, who he described as "an insurance salesman" who "had the liability policy and insurance policy" on Prater's car, and who the witness characterized as a "personal friend" and "a friend of our company and of 90% of the people that work there." He further

stated that Smith was customarily at Carpet Corner "at least twice a week."

Harlan Smith testified, as a witness for plaintiff, that on the date of Prater's accident, he was a soliciting agent for defendant; that he submitted applications for insurance to defendant that were either approved or disapproved by it; that he knew Mr. Davidson, defendant's president; that he took Prater's application for the subject policy and that he knew, on the date of the accident, that Prater had such policy, but that he (the witness) was not in Oklahoma City then and did not return here until in the "neighborhood" of January 2nd or 3rd, 1960; that thereafter he went to Carpet Corner in the "neighborhood" of once a week, and, while there, learned from Mr. Hayes and Mr. Holmes of plaintiff's law suit against Carpet Corner for $100,000.00. This witness denied he learned that the law suit involved Prater, but he admitted he reported his information to "Margaret", secretary to defendant's president, Mr. Davidson, and testified that Prater and Hayes were the only Carpet Corner people to whom he had sold liability policies issued by defendant. In this connection, the witness further testified:

"Q Now you would be interested, would you not, if either Prater or Hayes were involved in an accident and you would want to know about it, would you not and report it to the company especially on Cecil Prater, if Cecil Prater had an accident or was involved in an accident?

"A Why, certainly."

When plaintiff called Margaret James as a witness, she admitted she knew of Prater's accident, but she denied that she had ever heard of it *before* the hereinbefore quoted letter from Butler, Rinehart & Morrison was received in defendant's office on June 8, 1960.

At the close of the trial, the court called for written briefs from the attorneys in the case, and, more than two months later, entered judgment for defendant on the theory that the terms of the subject policy concerning notice had not been complied with. Although the trial judge stated in the journal entry of said judgment that June 7th, 1960, "was the first notice that the defendant had that its insured Prater had been sued", it appears reasonably certain that his use of the word "notice" had reference to the "written" notice prescribed in the policy, for it was the insured's failure to give that kind of notice that accounted for the decision in State Farm Mut. Auto. Ins. Co. v. Cassinelli, 67 Nev. 227, 216 P.2d 606, 18 A.L.R.2d 443, cited, and other uncited cases referred to indirectly, in his judgment as "the weight of authority * * *".

After the overruling of his motion for a new trial in 1964, plaintiff perfected the present appeal.

For reversal, plaintiff argues that the trial court erred in denying her recovery on the subject policy in the absence of any evidence that Prater's failure to comply with its terms regarding notice prejudiced defendant. With obvious reference to cases wherein courts have allowed recovery on insurance policies, without requiring compliance with the precise wording, or literal meaning, of their provisions for the insured's giving of "immediate notice", or notice "as soon as practicable" after losses thereunder, plaintiff contends, in substance, that the trial court should have arrived at a similar judgment in the present case.

Another reason advanced in support of plaintiff's position is that, in a case like this, the insured person—not being a party to the insurance contract—is at the mercy of the insured with reference to whether notice is, or is not, given to his insurer. Plaintiff concedes that where the insurer has had no opportunity to investigate such an accident and prepare a proper defense to such a third party's negligence action, the insured's failure to give his insurer notice of the accident should preclude recovery therein. Another reason she gives for not following the rule followed by the trial court is that where the insurance policy of two different insureds are involved, it may not occur to either of them

that more than one of the policies applies. Counsel's argument is to the effect that this would particularly hold true in a case like this, where Prater might have reasonably assumed that, since it was his employer's truck (instead of any auto belonging to him) that was involved in the collision, and since it was the company carrying the employer's insurance on that truck which undertook the accident's investigation, his (Prater's) insurance company was not involved, or liable. In support of her position, plaintiff cites several cases we do not consider to be directly in point.

Defendant, on the other hand, relies upon authorities to the effect that the insurer need not show prejudice to it from the insured's failure to comply with the policy's provisions as to notice, where, by the express terms of the policy, the giving of such notice is made "a condition precedent" (as in the subject one) to the bringing of an action thereon.

■■ As plaintiff recognizes, this court has never before had presented to it a case exactly like this one. A Federal Judge has remarked that: "No authority in Oklahoma has been found passing upon the question of necessity of showing prejudice for lack of prompt notice * * *" in circumstances, which, in some respects, were similar to those here. See Day v. Hartford Accident & Indemnity Co. (U.S.D.C., N.D., Okl.), 223 F.Supp. 953, 957, 958. We realize that there is an abundance of authority to the effect that when an insured attempts to recover on a policy like the one in question, without giving the insurer any kind of notice within a reasonable time from the time of his claimed loss thereunder, he must fail. See the cases discussed in the annotations at 18 A.L.R.2d 458, and others referred to and cited in 7 Am.Jur.2d, "Automobile Insurance", sec. 225, footnote 13, and 29A Am.Jur., "Insurance", sec. 1380, footnote 9. We are inclined to agree with plaintiff, however, that the principles applied in those cases should not apply with equal force, where recovery is sought under policy provisions which have the obvious effect of

protecting injured members of the public, as well as the insured; and we are especially of this opinion as to cases where the insurer has had actual notice, oral or written, of a potential claim by such a person, in time to adequately investigate it and protect its legal rights in regard thereto. While this State does not have the same statutes that the Supreme Court of Wisconsin has said express a public policy in that State to "protect the interests of injured third persons with respect to enforcing their claims against an automobile liability insurance carrier" (Stippich v. Morrison, 12 Wis.2d 331, 107 N.W.2d 125, 128; and see the discussions in Kurz v. Collins, 6 Wis.2d 538, 95 N.W.2d 365, and Zander v. Holly, 1 Wis.2d 300, 84 N.W.2d 87) nor the statutory reason for requiring the insurer to show prejudice that exists in Colorado (see Ewing v. Colorado Farm Mutual Cas. Co., 133 Colo. 447, 296 P.2d 1040), this court, at an early date, adopted a liberal construction of insurance policy provisions concerning notice. For instance, in the leading case of Dixon v. State Mut. Ins. Co., 34 Okl. 624, 126 P. 794, 795, L.R.A. 1915F, 1210, this court, in speaking of the insuring company, said:

> " * * * Unless time was made of the essence of the contract, the company cannot escape liability for the loss, *except it appears that they were injured by the failure* of the insured *to comply with the letter of the contract as to* time for *giving notice* and making proof." (Emphasis ours).

And, the Supreme Court of our Sister State of Kansas, in Jameson v. Farmers Mutual Automobile Insurance Co., 181 Kan. 120, 309 P.2d 394, an action based upon an Oklahoma judgment against an automobile driver injured in an accident, has held, as to a policy containing a so-called "omnibus clause" and public liability, and notice, provisions in all material respects identical with the one here involved, that an injured person, not a named, or formal party to said policy or insurance contract ("an additional insured") is a proper party to

satisfy the notice requirements of such a policy. In so holding, said court also held, in the 3rd paragraph of its opinion's syllabus:

"Insurance policy provisions requiring notice are liberally construed in favor of the insured and are always reasonably construed so as to conserve their true purpose for being a part of the contract."

In the body of the opinion (p. 399 of 309 P.2d) the court set forth the same good reasons for this rule that have always been recognized and applied by this Court, and further said (at p. 399):

" * * * it mattered not who gave the notice so long as notice was given and the insurer had actual notice thereby, giving it an opportunity to make an investigation and to defend the suit. * * *"

A reading of the above quoted opinion makes it obvious that, for the purpose of determining whether such a policy's notice provisions have been sufficiently complied with to serve their ultimate purpose of affording the insurer knowledge that can be acted upon to prevent it from being prejudiced (by failure of its contracting insured and named beneficiary to give notice specifically as provided in the policy) the court made no distinction between telephone conversations, or oral notice, and written notice, and we think there should be none. (See Leach v. Farmer's Automobile Inter-insurance Exch. 70 Idaho 156, 213 P.2d 920). We further observe that this case has been cited as one of the authorities for placing the burden of proving prejudice on the insurer. See Campbell v. Allstate Insurance Co., 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155.

A public liability insurance policy, or an automobile policy containing provisions for the named insured's indemnity in the event of injury to members of the public, is like a workmen's compensation insurance policy in some of its third-party-beneficiary aspects. (In this connection, also notice the hereinbefore quoted provision of the subject policy as to bankruptcy of the named insured). Prosecutions of claims under such policies have a basis in specific statutory provision, for the requirement that prejudice from failure of written notice be shown where the insuring employer, or his insurer, has had actual, or oral, notice of the accident and injury See Tit. 85 O.S.1961, § 24, and the cases digested under Note 16, 85 O.S.A. 24.

We think it is in accord with the public policy of this State, and the majority of better reasoned authorities on insurance policies like the one involved here, to place the burden upon the insurer to show prejudice from non-compliance with the policy's provisions concerning written notice, where the evidence shows that the insurer has received actual notice, or knowledge, of an accident or a potential claim arising out of it, and covered by the policy; and we so hold.

In apparently ignoring as immaterial, evidence adduced at the trial of this case contemplated to show that the defendant had received an oral, or telephonic, communication concerning the accident, and/or plaintiff's potential claim, which said communication may have been prior to the insurer's receipt of the letter from Prater's attorneys on June 8, 1960, and, in rendering judgment for defendant, despite the absence of any evidence that its rights were prejudiced under the circumstances, the trial court erred. Plaintiff's motion for a new trial should have been sustained on account of this error alone.

By what we have herein said, we are not ruling upon the sufficiency of the evidence to establish that defendant had actual knowledge of the accident prior to June 7, 1960. We are merely holding that the trial court's judgment should have reflected that he considered such evidence in holding for defendant. If he had found it sufficient to establish previous oral notice to defendant, within an ostensibly reasonable time period after the accident, then, under the rule here announced, he could not have correctly exonerated defendant from liability, under the policy, on account of non-compliance with the policy's provisions concerning written notice, without proof that, under the parti-

cular circumstances of this case, defendant's rights were prejudiced by such non-compliance.

In accord with the foregoing, the order and/or judgment of the trial court overruling plaintiff's motion for a new trial is hereby reversed, and this cause is remanded to said court with instructions to grant a new trial.

IRWIN, V. C. J., and WILLIAMS, BERRY and HODGES, JJ., concur.

JACKSON, C. J., and DAVISON and LAVENDER, JJ., dissent.

McINERNEY, J., concurs in result.