2004 OK CIV APP 79

**DIXSON PRODUCE, LLC, d/b/a Mr. Greenbean's Farm Market, a/k/a Greenbean's Produce, Plaintiff/Appellant,**

v.

**NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, Defendant/Appellee,**

and

**Weaver Insurance Agency, Inc., an Oklahoma corporation, Defendant.**

No. 98,261.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 1, 2004.

Certiorari Denied Sept. 27, 2004.

⊶3337

L. Don Smitherman, B. Wayne Dabney, Holloway, Dobson & Bachman, Oklahoma City, OK, for Appellant.

Charles A. Brandt, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, OK, for Appellee.

Opinion by JOHN F. REIF, Presiding Judge:

¶ 1 This appeal concerns a dispute between a retail produce business and its insurance company over insurance company's liability to pay losses that allegedly resulted from a tornado that struck the City of Moore (where insured business was located) on May 3, 1999. Insured business has complained that insurance company denied its initial claim for lost income, and has persisted in refusing to pay any of its losses, on technical grounds that insured business sustained no storm damage and was closed for only two days after the tornado. Insured business has

maintained that insurance company has ignored the fact that its sales took a downturn following the tornado and never recovered. Insured business has asserted that insurance company has never investigated its contention that the downturn in business resulted from the disruption of daily life in the City of Moore and restrictions on travel into and within the City of Moore in the weeks that followed the tornado. In particular, insured business believes that the restrictions on travel amounted to a denial of access to its business premises by civil authority, a covered cause of lost income.

¶ 2 Insurance company has pointed out that insured business did not give any notice that it was claiming loss due to the tornado of May 3, 1999, until August 3, 1999. Insurance company has noted that insured business initially claimed only lost income. Insurance company has stressed that its telephone inquiry to the owner of insured business about the initial claim revealed there was no damage to the business premises and that business was only closed a few days. Insurance company admits this initial claim was denied on the basis of such limited information, because the business was not closed due to restoration of storm damage—the only coverage that appeared to apply.

¶ 3 Insurance company has further noted that it reopened the claim by insured business after receiving notice from the Oklahoma Insurance Commissioner that insured business was claiming a loss due to product spoilage in addition to lost income. After receiving this new information, a representative of insurance company contacted the owner of insured business both by phone and in writing.

¶ 4 According to the insurance company file note, dated September 5, 1999, a representative spoke with the owner of insured business, but the owner did not know the amount of his spoilage nor have any idea about the income lost from business interruption. The note indicates that the owner of insured business would provide documentation soon.

¶ 5 On September 8, the same representative for insurance company placed a follow-up call to the owner of insured business and made a file note concerning their conversation the next day. The file note recounts that insured business had ceased doing business. Concerning losses, the note records that the business lost electricity for twelve to fourteen hours and that between $500 and $1,000 worth of food went bad due to the lack of electricity. The note further reflects that the business was closed only two days, but not due to physical damage to the business premises.

¶ 6 The note further reflects that the owner of insured business really did not know exactly how much spoilage occurred and refused to give any type of figure regarding the amount of money he would have lost from closing for two days. The note records that business owner was advised that if he would not give any amounts that he thought he may have lost, then the representative could not possibly try to adjust or settle his claim.

¶ 7 The note also records that the owner of insured business felt like he should have had coverage for the downturn in business that followed the tornado and which lead to the eventual closing of his business. The owner of insured business was of the opinion that the agent who sold him the policy should have provided coverage for a total loss of business, even in a case where there was no physical damage to the business premises and the business reopened. The note concludes with the representative asking the owner of insured business to think it over a few days and to call back if he wanted the representative to pay the loss as it is covered under the policy.

¶ 8 In a letter dated September 15, 1999, insurance company requested a formal proof of loss from the owner of insured business, pointing out to the owner that he had theretofore "refused to provide us with enough information to fully investigate and evaluate your claim." A week later, on September 22, insurance company notified the Oklahoma Insurance Commissioner that the owner of insured business had been contacted to learn more facts following his added report of food spoilage. The Insurance Commissioner was advised that the owner refused to cooperate

in providing any facts of his losses or give supporting documentation for them. This letter also notes that insurance company had encouraged owner's cooperation and had provided a proof of loss for his completion and return within the 60–day policy period.

¶ 9 Business owner acknowledged that the Oklahoma Insurance Commissioner provided him a copy of the letter insurance company sent to the Commissioner. He further acknowledged that the cover letter from the Oklahoma Insurance Commissioner "[s]uggest[ed] you immediately provide the company with the information they are requesting so they can properly consider your claim."

¶ 10 In his deposition, the owner of the insured business admitted that he did not complete the proof of loss and return it to insurance company. He did, however, explain that he believed that insurance company was only interested in settling for spoilage when he believed he had a valid loss of income claim. He would ultimately admit, however, that he had the opportunity to complete the proof of loss and send it in with what he perceived to be his loss and that he did not take that opportunity. Owner also indicated that he did not discuss the proof of loss with anybody or seek advice about what to do with the proof of loss.

¶ 11 Insured business sued insurance company on May 22, 2001, claiming breach of contract, failure to deal fairly with insured business, and negligence for failing to provide full coverage for its losses. Insurance company moved for summary judgment on the breach of contract and "bad faith" claims, citing (1) the failure of insured business to provide proof of loss for the spoilage claim as required by the policy, and (2) the absence of coverage under the policy for the claim for lost income because there had been no business interruption for damage restoration, or denial of access to the premises by civil authorities. In response, insured business contended that there was a controversy over the need for a proof of loss in light of deposition testimony that insurance company only "occasionally required" a formal proof of loss as well as a controversy on the issue of whether travel restrictions into and within the City of Moore after the tornado constituted denial of access to the business premises by civil authorities.

¶ 12 The trial court determined that there was no material controversy in these regards and granted summary judgment in favor of insurance company.[1] Upon review, we agree.

¶ 13 It is difficult to conceive of a case in which a proof of loss would be more important, if not absolutely essential, than the case at hand. Even though there is no dispute that the produce that spoiled from the loss of electricity due to the tornado was a covered loss, the spoiled produce itself had been disposed of long before a claim was made for this loss. The owner of insured business testified that no photographs were taken of the spoiled produce and there was no one other than the owner who had information about the spoilage and disposal of the produce. Even if the circumstances made it unfeasible to "set the damaged property aside and in the best possible order for examination," nothing in the record can excuse insured business from failing to give "complete inventories of the damaged . . . property [with] quantities, costs, values and amount of loss claimed" or from not sending "a signed, sworn statement of loss containing [loss] information" as requested.

¶ 14 According to the insurance company file note of September 9, the owner of insured business estimated the spoilage loss to be between $500 and $1,000, while his deposition testimony placed the loss as high as $1,500. However, insurance company is not required to simply take the owner's word for the value of the loss and properly sought details concerning this loss as a condition to paying the claim. Moreover, the owner of the business acknowledged that not all of the spoilage was due to the loss of electricity. He indicated that some spoilage occurred from a lack of turnover in the produce due to slow business in the days and weeks following the tornado. When asked to segregate the amount or value of each type of spoilage,

---

**1.** According to the docket sheet, the negligence claim and Weaver Insurance Company were dismissed without prejudice on September 12, 2002.

the owner of insured business said he could only guess. This answer suggests that he had no record of the type, amount, and value of the spoiled produce from either or both causes.

¶ 15 Clearly, insurance company acted prudently and reasonably in requesting a detailed proof of loss from insured business and by withholding an offer of any payment in the absence of such information. There was neither a breach of contract nor bad faith on the part of insurance company in this regard.

¶ 16 We reach a similar conclusion with respect to insured business' claim for lost income. There is no serious dispute that the tornado knocked out electrical power to insured business and it was not restored until sometime in the afternoon of May 4, the day following the tornado. Likewise, there is no serious dispute that insured business did not open the next day, May 5, due to the cleanup and general chaos in the City of Moore. Clearly, the tornado was the cause of such business interruption and the spoilage that occurred was "direct physical loss of or damage to Covered Property at the premises described." After being advised of the spoilage, insurance company attempted to determine the loss of business income for the two-day period following the tornado. In view of the fact that the policy covers the "actual loss of Business Income," it was incumbent upon the owner of insured business to provide insurance company sufficient information to determine "the actual loss of Business Income," which the owner of insured business refused to do.

¶ 17 Additionally, while there is evidence that some streets were closed in the City of Moore, there was no "action of civil authority that *prohibit[ed] access to the described premises* due to direct physical loss of or damage to property other than at the described premises." (Emphasis added.) Even though travel to insured business was not as convenient as it had been before the tornado, civil authority in the City of Moore did not prohibit anyone access to insured business. The fact that insured business reopened and resumed operations alone establishes that access to the insured premises was not prohibited by either storm damage or civil authority.

¶ 18 The owner of insured business has suggested that insurance company should have sent a representative to Moore in order to fully and fairly investigate the claim. However, by the time insurance company was advised that there was property loss on the business premises from spoilage, insured business had ceased business operations. Also, the spoiled produce had been disposed of and the owner of insured business had indicated that he was virtually the only source of information about the business losses. It is not clear what information an on-site investigation would have yielded that could not have been learned from the submission of a proof of loss.

¶ 19 The single uncontested material fact that is dispositive of the summary judgment in favor of insurance company is the fact that the owner of insured business is the one who breached the parties' insurance contract by failing to provide essential information about the claimed losses that owner alone possessed *after* both oral and written requests from the insurance company, an urging by the Oklahoma Insurance Commissioner, and a reasonable opportunity to do so.

¶ 20 It has long been recognized that "the failure to make proof of loss within the [time period] provided by the policy does not render the policy void or defeat a recovery [however] the right of action on an insurance policy does not mature until the provision requiring proof of loss has been complied with [and] the proof must be made before the action can be maintained." *Niagara Fire Ins. Co. of New York v. Nichols*, 1923 OK 998, 220 P. 920, 922 (citations omitted). While substantial compliance in furnishing the required proof in support of a claim is all that is required, *see St. Paul Fire & Marine Ins. Co. v. Mittendorf*, 1909 OK 233, 104 P. 354, compliance is sufficient only if it serves the "ultimate purpose of affording the insurer knowledge that can be acted upon." *See Fox v. National Sav. Ins. Co.*, 1967 OK 27, ¶ 18, 424 P.2d 19, 25. The information provided in the case at hand by the owner of insured business did not afford the insurer knowledge that could be acted

upon, and the right of action on the policy at issue did not mature and cannot be maintained, due to insured business' failure to comply with the policy requirement and request for a proof of loss.

¶ 21 In addition, the belated claim and failure to provide the proof of loss as required and requested also formed the basis of a legitimate dispute between insured business and insurance company over extent of coverage, cause of loss, amount of loss, and breach of policy conditions. It is well settled that a bad faith cause of action will not lie where there is a legitimate dispute over such matters. *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, ¶ 12, 681 P.2d 760, 762. "[A] trial court correctly [grants summary] judgment to [an insurer] on [an insured's] claim of bad faith [where the insurer has] a reasonable defense to the claim, based on the facts thereof." *Narvaez v. State Farm Mutual Auto. Ins. Co.*, 1999 OK CIV APP 92, ¶ 13, 989 P.2d 1051, 1053.

¶ 22 Applying the foregoing authority to the undisputed material facts of the case at hand leads us to conclude that the trial court properly granted summary judgment in favor of defendant insurance company on the insured business' claims of breach of contract and bad faith. Accordingly, the summary judgment is AFFIRMED.

RAPP, J., and GOODMAN, J. (sitting by designation), concur.