**REPUBLIC INSURANCE COMPANY,**
Appellant,

v.

**Dennis HAVERLAH, Appellee.**

**No. 12720.**

Court of Civil Appeals of Texas,
Austin.

May 3, 1978.

Wayne H. Prescott, Brown, Maroney, Rose, Baker & Barber, Austin, for appellant.

Jonathon H. Smith, Austin, for appellee.

O'QUINN, Justice.

The controlling issue in this appeal is whether an unoccupied aircraft, damaged while "in motion" on the ground, was at the time being *operated* by a licensed pilot within coverage of the policy of insurance sued upon.

Dennis Haverlah brought this suit against Republic Insurance Company for damages to an airplane owned by Haverlah under a policy of insurance Haverlah claimed protected against such loss. Republic Insurance denied liability on the ground that the aircraft was not at the time of the accident being *operated* by a licensed pilot as required under the policy.

The facts in brief are that Haverlah, who is a licensed pilot, taxied the plane from its hangar to a location for performing maintenance. After stopping the airplane, with the engine running, Haverlah stepped from the plane to place chocks in front of the wheels. The aircraft moved forward downhill and was damaged when it crashed into a grove of nearby trees. Because the cockpit of the plane was not occupied by Haverlah, or another licensed pilot, Republic contended the plane was not being "operated by a licensed pilot" within terms of the policy.

Provisions of the policy relative to the issue in this case are "Paragraph Y," titled "All Risks While in Motion," and "Paragraph I" specifying exclusions.

Under Paragraph Y of the "Insuring Agreements" the insurer agrees ". . . to pay for direct loss or damage to the aircraft . . . occurring while the aircraft is in motion under its own power or momentum . . ." Under Paragraph I of the "Exclusions" the policy is made not to apply to ". . . any occurrence or to any loss or damage occurring while the aircraft is operated, while in motion, by other than the pilot or pilots set forth under Item 7 of the Declarations."

The effect of Item 7 is to name the licensed pilots. But in this appeal it is undisputed that Haverlah is a licensed pilot and no issue is made of that fact. The insurance company contends only that there is no coverage under the policy because at the moment of collision the aircraft, although "in motion," was nevertheless not "operated by a licensed pilot" who, in reality, was standing on the ground, with chocks in his hand, but not sitting in the cockpit.

Both parties moved for summary judgment in the trial court. The court denied the motion of Republic Insurance and granted that of Haverlah. We will affirm the judgment of the trial court.

Republic Insurance brings two points of error, both of which essentially present the insurer's contention that even though the aircraft was *in motion*, the company is not liable because at the time of collision no licensed pilot was *operating* the aircraft.

The undisputed facts are that Haverlah started the engine of the aircraft; taxied the craft to a predetermined position for maintenance operations; set the handbrake designed to hold the aircraft in place; stepped out of the cockpit temporarily to place blocks under the wheels; and planned to check the aircraft engine operation at that location, later return the plane to the hangar, and there allow the warm oil to drain. Appellee contends that these steps clearly describe "operation" within the commonly understood meaning of the word, that he was the person in charge, or the "operator" throughout these actions, and no other person was present to "operate" the aircraft.

Neither party by brief or oral argument has presented authority purporting to pass on the precise question in this case, nor have we found any such authority. Use of such terms as "operated by," or "engaged in operating," as those terms or their equivalents may be used in an automobile insurance policy, have been considered in numerous cases.

It is clear from these cases that a narrow construction of the word "operate," in the sense of actual mechanical movement of an automobile, is not favored by a majority of the courts. For example, an insured has been held to have been *operating* an automobile in the act of jumping up and down on the bumper in an effort to disengage it from the bumper of another vehicle. *Crollard v. Northern Life Ins. Co.*, 240 Mo.App. 355, 200 S.W.2d 375 (1947). See generally 6 Blashfield, *Cyc. of Automobile Law and Practice*, Perm. Ed., sec. 4127.

In Texas it has been held that a driver who had stopped his car, cut off the motor, opened the door to step out, and "while he was in the act of getting out" stepped upon some object on the ground resulting in injury to his ankle, ". . . was injured while operating his automobile within the meaning of the terms of his insurance contract . . ." *Southern Surety Co. v. Davidson*, 280 S.W. 336 (Tex.Civ.App. Fort Worth 1926, no writ). In a later case, where the insured had entered the automobile, taking his place in the driver's seat at the steering wheel for the purpose of starting the car and returning to the city from a hunting trip, was by the parties conceded to be "engaged in operating" the automobile, under authority of *Davidson*. *Dorsey v. Fidelity Union Casualty Co.*, 52 S.W.2d 775, 776 (Tex.Civ.App. Waco 1932, writ dism'd).

Other absences from the driver's seat did not preclude a finding that the insured was operating the automobile in the following cases. The term "operating" does not contemplate a constant and unceasing motion, but includes such stops as the driver ordinarily makes in the course of operating a car, and moments of rest are as much the operating of a car as moments of progress.

*Union Indemnity Co. v. Storm*, 86 Ind.App. 562, 158 N.E. 904 (1927). A driver who had stopped his car for the necessary purpose of changing or mending a tire, and was employed in that work with the customary tools, in the usual manner, was engaged in operation of the car. *Kennedy v. Maryland Casualty Co.*, 26 F.2d 501 (W.D.La.1928). The driver who sustained injuries from the skidding of an automobile he was pushing to assist a wrecker was also "operating" the car within the meaning of the insurance policy. *Merklein v. Indemnity Ins. Co. of North America*, 214 Wis. 23, 252 N.W. 280 (1934).

Appleman, with respect to *operating* of an automobile, defines the term as involving personal physical management by the person. 7 Appleman, *Insurance Law and Practice*, sec. 4314. Pursuing the analogy of the automobile further, two cases decided by Illinois courts are persuasive in concluding that no significant difference is apparent in applying the rule to the operation of an aircraft under the facts of the present case. In *Vesely v. Prestige Casualty Co.*, 4 Ill.App.3d 726, 281 N.E.2d 724, 725 (1972), the policy endorsement *excluded* coverage when the automobile was being operated by insured's son-in-law. The court held there was no coverage because the son-in-law was *operating* the automobile which he had stopped, and, leaving the engine running, had left while he stepped into a package store to make a purchase. The accident occurred in his brief absence. In the present case Haverlah was away from the plane for the immediate purpose of fetching wheel chocks, when the plane moved under its own power to be damaged in the trees, yet by the rule stated in *Vesely*, Haverlah continued to *operate* the aircraft. In 1974 the Illinois court held that a person was *operating* an automobile while engaged in repairs on the vehicle while it was stopped in a service station. *Heritage Ins. Co. of America v. Phelan*, 17 Ill.App.3d 443, 308 N.E.2d 176 (1974).

Other cases from other jurisdictions consistent with the conclusions reached by the authorities already considered include the

following. The Supreme Court of South Carolina held that a vehicle was being *operated*, although it was parked at a service station while the driver was eating lunch. *Stephens v. Cottingham*, 237 S.C. 108, 115 S.E.2d 505, 508 (1960). A Federal court held that the insured was operating a tractor-trailer which was standing in the highway, broken down, while its cargo was being unloaded. *Liberty Mutual Ins. Co. v. McDonald*, 97 F.2d 497 (6th Cir. 1938).

Appellant insists that Haverlah had to be in the cockpit in order to be "operating the aircraft" at the time of the accident. This position is contrary to the rule applied in automobile cases involving construction of provisions in an insurance policy similar to the provisions of the policy in this case. We conclude that the analogy of the automobile to the aircraft, under the facts of this case, is sound, and we apply the principles of those cases. Haverlah as a licensed pilot was in personal physical management of the aircraft, performing customary acts of maintenance and handling, so as to place him in the position of operating the plane on the occasion of the accident.

The judgment of the trial court is affirmed.