JAMES VOS, Plaintiff-Appellant, v. THE TRAVELERS INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)   No. 1—91—0567

Opinion filed June 30, 1992.

Wojcik & Wojcik, of Chicago (William S. Wojcik, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Edward J. Zulkey, Michael A. Pollard, and Ronald L. Ohren, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

James Vos, plaintiff, was injured at his father's service station when he was struck by a customer's van. The vehicle lurched into Vos shortly after his father had driven it into a bay for service. Vos filed suit to recover insurance proceeds from the uninsured motorist provision of a policy owned by his father and issued by defendant, The Travelers Insurance Company (Travelers). The pertinent coverage issue involves language stating that an "uninsured motor vehicle" does not mean the insured's car or a "non-owned car while being operated by [the insured]." Vos argued that because his father had left the van at the time it moved, it was not "being operated" by his father. Therefore, Vos contended that his claim fit within the uninsured motorist coverage of the insurance policy.

The trial court rejected Vos' construction and held that the van was in fact being operated by Vos' father at the time of the incident. Accordingly, the court entered judgment as a matter of law in favor of Travelers and against Vos on his cross-motion for summary judgment.

On appeal, Vos urges us to reverse the trial court and enter judgment in his favor either by finding that his father was not operating the van or by finding the policy language ambiguous and then construing it in his favor.

We affirm.

BACKGROUND

On January 6, 1988, Vos was working at his father's service station in Evergreen Park, Illinois. Customers left keys to their cars so employees of the station could move them as needed for service. In his deposition, Vos' father testified that when a customer's vehicle was to be serviced, an employee would drive it into one of five service bays. Customers were not allowed to drive their own cars into the bays.

On January 6, Vos' father had driven a customer's van into a bay for a tune-up. He testified that he left the van "on high idle" when he got out, but did not recall whether he put the van in "park" or set the emergency brake. His intention was to immediately perform a tune-up and he was either closing the door or going for tools when the van moved forward and pinned his son's leg against another vehicle. Vos' father testified that he was four or five feet from the van when the accident happened.

Travelers had issued a personal automobile liability policy to Vos' parents, which was in effect at the time Vos was injured. The policy provides several coverages. Under the uninsured motorists coverage, Vos is an insured because he fits the definition of a "relative, residing in [the named insured's] household." In pertinent part, the policy states:

> "[Travelers] will pay damages that the insured is *legally entitled to recover from the owner or operator of an uninsured motor vehicle* because of bodily injury suffered by the insured and caused by accident. Liability for such damages must arise out of the *ownership, maintenance or use* of the uninsured motor vehicle." (Emphasis added.)

The uninsured motorist coverage defines what is and is not an "uninsured motor vehicle." This definitional provision, upon which the appeal turns, states that an uninsured motor vehicle is

> "a highway vehicle or trailer of any type *** insured by a company which denies coverage ***. However, *an uninsured motor vehicle does not mean:* 1. Your [named insured's] car, *a non-owned car while being operated by you,* or any vehicle furnished or available to you or a relative for regular use." (Emphasis added.)

Under this language, if the named insured (Vos' father) is deemed to be operating a car he does not own (the customer's van), at the time the accident occurred, Vos' claim must be denied because the van involved in the collision would be excluded from the definition of uninsured motor vehicle.

Vos notified Travelers of his claim, stating that his injuries were covered by the uninsured motorist provisions of the policy issued to his parents. Travelers declined coverage, however, explaining in a letter that the uninsured motorist provision of the policy did not come into effect. The letter gave alternative grounds for denying coverage, first stating that insurance proceeds were payable only for damages that the insured was "legally entitled to recover from the owner or operator of an uninsured motor vehicle." The van's owner was not legally responsible for Vos' injuries and, according to the letter, there was no "operator." In the alternative, if Vos' father was considered to be the van's operator, coverage would still be denied because an insured cannot recover if the nonowned car was being operated by the named insured at the time of the accident.

Vos filed the pending declaratory judgment action seeking a judicial determination that his injuries were covered under the policy. The parties filed cross-motions for summary judgment, and the trial court ruled in favor of the insurance company, stating, "[The court is] convinced that [plaintiff's] father was operating this [vehicle] at [the] time the incident occurred."

OPINION

On appeal, Vos focuses on a narrow interpretation of the phrase "while being operated." He contends that his father was not literally in physical control of the van when it moved forward, and therefore, he was not operating it. Alternatively, he maintains that the policy language is ambiguous and should be construed in his favor.

To support his position, Vos quotes dictionary definitions of the words "while," "being," and "operated." He also cites an excerpt from 6B J. Appleman, Insurance Law & Practice §4314 (1979), to the effect that the "better" definition of "operating" is that it "involves personal physical management of the automobile by the person in question." (*Cf. Republic Insurance Co. v. Haverlah* (Tex. Civ. App. 1978), 565 S.W.2d 587, 589 (Appleman definition of "personal physical management" is not restricted to literal physical presence in the driver's seat while manipulating the controls).) Vos urges this court to accept as the ordinary and popularly understood meaning of the phrase "while being operated" as "happening or occurring during the immediate time that the vehicle could be physically worked, controlled, or acted upon by JAMES VOS, SR."

Undoubtedly, if Vos' father had been at the wheel when the accident occurred, he would have fit squarely within the above definition of operating the van and there would be no question whatsoever that

the uninsured motorist coverage would not apply in this case. The sole issue, then, is whether the trial court erred in construing the key phrase more broadly than actual, physical control of the van while it was moving.

In *Collins v. Economy Fire & Casualty Co.* (1981), 96 Ill. App. 3d 796, 798, 422 N.E.2d 74, 75, this court recognized that "Illinois has construed the act of operating to be broader than that of driving." For that proposition, the court cited two decisions that we believe are controlling on the issue of whether Vos' father was "operating" the van at the time it struck Vos: *Heritage Insurance Co. of America v. Phelan* (1974), 59 Ill. 2d 389, 321 N.E.2d 257, and *Vesely v. Prestige Casualty Co.* (1972), 4 Ill. App. 3d 726, 281 N.E.2d 724. In *Heritage*, the Illinois Supreme Court upheld as valid and enforceable a provision in an automobile insurance policy that expressly denied coverage for a named individual, Phelan, as an "operator." Phelan, a 19-year-old male, was injured at a service station by an uninsured motorist whose car struck Phelan while he was standing next to his own uninsured vehicle. Phelan, who had stopped at the service station for minor maintenance to his car, was assisting the attendant at the time he was injured. The court held that because Phelan had been specifically named as an excluded operator under his parents' policy, the uninsured motorist provision did not apply.

In *Vesely*, the plaintiff was named in his father-in-law's automobile insurance policy as an excluded operator. The plaintiff left the engine of his automobile running while he went inside a store to purchase liquor. His father-in-law remained in the car, as a passenger. While plaintiff was making his purchase, the car was involved in a serious collision. The court ruled that insurance proceeds were not payable under the policy because the accident occurred during plaintiff's operation of the vehicle.

The *Vesely* court had little problem determining that leaving a vehicle while the engine is running constitutes a continued operation of the vehicle. As the court pointed out, "operate" is "not limited to a state of motion produced by the mechanism of the car." (4 Ill. App. 3d at 728, 281 N.E.2d at 725.) We believe that the facts of the pending case are analogous to those in *Vesely*, and under the reasoning of that decision, we hold that Vos' father was operating the van, even after he stepped away from it, because he drove it into the bay and left the engine running.

Vos maintains, nevertheless, that neither *Phelan* nor *Vesely* is controlling because, in each case, the individual who was specifically named and intended to be excluded from coverage was "the driver

[who had] temporarily stopped the car for a few minutes, intending to resume driving it." In other words, the excluded driver's operation of the car was only briefly interrupted for a stop that was incident to the continued driving of the vehicle. Vos argues that his father was not in the same situation as the drivers in *Phelan* and *Vesely* because he was only driving the van into a service bay for the purpose of maintenance, rather than using it as a means of transportation.

Although we agree with Vos that his father's driving of the van was only incidental to performing a tune-up, we do not agree that this fact distinguishes the case from *Phelan* and *Vesely*. Why he was driving is irrelevant. The exclusionary language of the uninsured motorist coverage only states that a "non-owned vehicle while being operated" by the named insured is not an "uninsured motor vehicle." Without an uninsured motor vehicle, there is no uninsured motorist insurance coverage.

If Vos' father was not operating the van at the time of the occurrence, no one was. As Travelers stated in its letter declining coverage, payment under the uninsured motorist coverage would be made only for those damages that the insured was legally entitled to recover from the *owner or operator* of an *uninsured* vehicle. Consequently, if Vos could not recover damages from the owner or operator of an uninsured vehicle, Travelers had no liability. In this case, the underlying negligence action did not join the van's owner. The sole ground for recovery would be against the van's operator, Vos' father. Under Travelers' policy, however, if the named insured was operating the van, the coverage did not apply.

In our view, there is no doubt that Vos' father was the operator of the van during the critical time. He took the keys and started the van, drove it into the bay, and left it in high idle while he stepped away briefly, intending to immediately return. Indeed, Vos' complaint admits the existence of an operator of the van because it alleges that Vos' injuries resulted from the negligent acts that "an operator of an uninsured motor vehicle" committed, including one or more of the following: leaving the motor vehicle unattended while its engine was left running (in violation of a statute); failing to set the emergency brake; failing to engage the transmission completely into a parking position before leaving the vehicle; or failing to set appropriate blocks under the front wheels while the engine was running and the vehicle unattended."

We believe that the trial court's ruling correctly disposed of the matter. Vos, however, insists that finding his father to be the van's "operator" does not end the analysis. According to Vos, there is a le-

gally significant distinction between the noun "operator" and the verb "operate," for purposes of his claim. He contends that he is covered under the policy because his injury did not occur *while* his father was *operating* the van. Therefore, he maintains, his father may have had the "role" of an "operator," but he was not "operating" the van at the time of the accident. Vos analogizes the situation to that of a surgeon who, after leaving the operating theater, is no longer operating, but remains, nonetheless, a surgeon.

■ We find this argument confusing and unpersuasive. The sole support Vos cites in favor of the noun/verb dichotomy apparently comes from a remark the Illinois Supreme Court made, in *Phelan*, during its discussion of the validity and effect of the "named operator exclusion." The court noted that the exclusion did not mention the "operation" of the insured vehicle or any particular vehicle but simply named Phelan as an "operator." The court further observed that the term "operator" is not synonymous with "driver." (59 Ill. 2d at 399.) While Vos apparently believes the reference to "operation" assists his theory, we read the court's comments as meaning that a car may be operated in ways that are not limited to the acts commonly understood as "driving." Hence, to give effect to Phelan's exclusion from coverage as a named "operator," it was not necessary for Phelan to be at the controls of the car at the time of the occurrence. The fact he was standing next to his car when another car hit him did not affect the court's conclusion that he was the "operator" that the insurance policy intended to exclude from coverage.

We see no way that Vos' position is aided by *Phelan*. On the contrary, the decision supports Travelers' position. *Vesely* is even more on point, and that opinion demonstrates that the inquiry as to whether a vehicle is being operated by someone is not limited to his or her physical manipulation of the controls. In the pending case, the only person who had exercised control over the operation of the van just preceding the accident was Vos' father. He was thus involved in the personal physical management of the vehicle under the Appleman definition of "operating."

The law in other States, moreover, supports the rationale of *Vesely*. In *Republic Insurance Co. v. Haverlah* (Tex. Civ. App. 1978), 565 S.W.2d 587, for example, the court reviewed facts similar to those of the pending case and cited *Vesely* and *Phelan* with approval. The ultimate issue in *Haverlah* was whether the insurance company was liable on an insurance claim for damage sustained by an airplane when the pilot left the engine idling and climbed out to place chocks in front of the wheels in anticipation of maintenance. Under the terms

of the coverage, damage to the plane was recoverable if it occurred while the aircraft was in motion under its own power, as long as the designated pilot was "operating" the aircraft.

The court, noting that the pilot was the person in charge throughout, rejected an argument (similar to Vos') that the plane was not being operated because the pilot had left the plane at the time it rolled into trees. The *Haverlah* court analogized to automobile cases in which a party's absence from the driver's seat did not preclude a finding that the insured was operating the automobile. The Texas court concluded that the pilot in the case before it "continued to operate the aircraft" even while he was away fetching wheel chocks in preparation for maintenance. See also *Stephens v. Cottingham* (1960), 237 S.C. 108, 115 S.E.2d 505 (A vehicle could be considered in operation even if it was parked at a service station or a restaurant while the driver was eating lunch).

We conclude that the trial court correctly construed the policy in issue and properly entered judgment in favor of Travelers. We do not find the policy language ambiguous. The undisputed facts indicate that the named insured, Vos' father, was at the relevant time chargeable with operating the van. As the trial court commented, as "soon as Vos's father climbed in the van and turned the key, he started operating it. *** He was turning a dead object into a live object. And he got out and left the engine running. He left the same operation going that existed when he turned the keys on. When he walked away, he did not divest himself of control to anybody else."

For the foregoing reasons, we affirm the ruling of the trial court.

Affirmed. `

JIGANTI, P.J., and McMORROW, J., concur.