(No. 46623.—)
HERITAGE INSURANCE COMPANY OF AMERICA, Appellee, v. JAMES PHELAN *et al.*, Appellants.

*Opinion filed November 27, 1974.*

GOLDENHERSH, WARD and SCHAEFER, JJ., dissenting.

William N. Anthony, of Chicago (Isadore M. Bernstein, Ltd., of Chicago, of counsel), for appellants.

Rolland H. Stimson, of Chicago, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

An action for declaratory judgment was filed by the Heritage Insurance Company of America in the circuit court of Cook County against James Phelan, a minor, and William Phelan to determine the rights and obligations of the parties under the "uninsured motorist" provision of the automobile insurance policy issued to William Phelan by Heritage. The court denied plaintiff's motion for summary judgment and dismissed the complaint for want of equity. On appeal, the Appellate Court for the First District reversed, holding that a restricted named operator endorsement (hereinafter referred to as a restrictive endorsement) in the policy was sufficient to exclude James Phelan from the uninsured-motorist coverage of his father's policy. (17 Ill. App. 3d 443.) We granted leave to appeal.

On May 28, 1966, James Phelan, then aged 19, had completed high school and was employed part time at a local produce market, but continued to reside at the home of his parents. James owned a 1957, 2-door Chevrolet for which he had failed to purchase automobile liability insurance and which was not an insured vehicle under his father's policy. Upon starting his car to leave for work on that morning, he discovered that his car was overheating, diagnosed the problem as a leaky heater hose, and stopped at an Enco service station en route with the intention of having the faulty hose replaced and then continuing to his place of employment. James parked the car in the driveway of the station, informed the station attendant of the problem and went inside the station to look at some tires. With the car engine no longer running, the leak was not apparent to the attendant, so he asked James to return to the car and indicate the source of the problem. After

being shown the leaky hose, the attendant proceeded to replace it with a new hose, but was interrupted several times because the station was doing a brisk business that morning. At the request of the attendant, James stayed beside his car and then assisted with the repairs by holding a screwdriver in one hand and keeping the new hose secured to its connection with his other hand while the attendant was pumping gas for another car that had pulled into the station. While bent over his car assisting the attendant in this manner, James was struck and seriously injured by an Oldsmobile automobile which had just entered the station's driveway, being driven by an uninsured motorist. James, a minor, by his father, William Phelan, filed a personal injury suit against Willard Harris, the proprietor of the service station, who was covered by a public-liability-insurance policy applicable to the accident. The suit was eventually settled in 1971 for $6000 on a covenant. James also filed a demand for arbitration with the American Arbitration Association in accordance with the "uninsured motorist" provision in his father's automobile insurance policy issued by the Heritage Insurance Company. Heritage refused to arbitrate, denying that James was covered under the "uninsured motorist" provision, and instituted this action for a declaratory judgment.

Attached as an appendix to William Phelan's automobile insurance policy was a restrictive endorsement which listed William Phelan as the named insured and then contained the following language:

"In consideration of the issuance or continuation of the above policy, it is agreed that the insurance afforded by the policy shall not apply with respect to the following described operator(s):

James Phelan 5526 S. Massasoit Son Age 17."

William Phelan indicated his acceptance of the endorsement by signing his name directly below the above language. Appellants contend that the endorsement is immaterial in this factual situation and that the outcome

of this case should be controlled by our previous decisions in *Barnes v. Powell* (1971), 49 Ill.2d 449, and *Madison County Automobile Insurance Co. v. Goodpasture* (1971), 49 Ill.2d 555, as extended by the Appellate Court for the First District in *Doxtater v. State Farm Mutual Automobile Insurance Co.* (1972), 8 Ill. App. 3d 547. Those decisions, however, are applicable only if James Phelan was an "insured" under his father's policy, and the proper interpretation of the restrictive endorsement therefore becomes the crucial issue to be decided. We agree with the holding of the appellate court that since James Phelan was an "operator" at the time of the accident, he is excluded as an "insured" by the clear and unambiguous language of the endorsement and thus is afforded no protection by the "uninsured motorist" section of the Illinois Insurance Code (Ill. Rev. Stat. 1965, ch. 73, par. 755a) and the *Barnes, Goodpasture,* and *Doxtater* decisions interpreting that section of the Insurance Code.

In *Barnes,* the plaintiff was injured while riding as a passenger in her own car. The driver had no liability insurance, and the parties agreed that the plaintiff was not entitled to any recovery under the liability coverage of her own insurance policy. The uninsured-motorist provision of her policy was applicable only if she was legally entitled to recovery of damages from the owner or operator of an "uninsured automobile." The definition of "uninsured automobile" in the policy specifically excluded "an insured automobile." Since the plaintiff was in her own "insured automobile" at the time of the accident, it was urged that the policy offered her no recovery for personal injury under the uninsured-motorist provision. This court held, however, that such a literal application of the terms of the policy was not consistent with the intent of the legislature in enacting section 143a of the Illinois Insurance Code, which provided at the time of the accident:

"On and after the effective date of this amendatory Act of 1963, no policy insuring against loss resulting from

liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintainance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 7—203 of the 'Illinois Motor Vehicle Law', approved July 11, 1957, as heretofore and hereafter amended, *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1963, ch. 73, par. 755a.)

The law remains basically unchanged with only the right of the named insured to reject uninsured-motorist coverage having been significantly modified. (Ill. Rev. Stat. 1973, ch. 73, par. 755a.) In deciding *Barnes,* we stated that:

"\*\*\* the intent of the legislature was that the uninsured motorist coverage would protect an *insured* generally against injuries caused by motorists who are uninsured and by hit-and-run motorists, and that this would complement the liability coverage. The distinction that the uninsured motorist was the driver of the automobile in which plaintiff was a passenger, rather than the driver of another automobile, is not decisive. As to this particular plaintiff, because she was excluded from the liability coverage of the policy, the automobile was not an insured automobile and the driver was not an insured motorist, notwithstanding that as to all others the automobile and the driver may have been insured. Because no liability insurance was applicable to the plaintiff at the time of the accident, her uninsured motorist coverage necessarily became effective in light of the legislative mandate." (Emphasis added.) (49 Ill.2d at 454.)

*Goodpasture,* decided the same term as *Barnes,* involved an almost identical factual situation, and the court merely relied on *Barnes* to reach the same result.

In *Doxtater v. State Farm Mutual Automobile Insurance Co.* (1972), 8 Ill. App. 3d 547, Virgil Doxtater suffered personal injuries when his motorcycle was involved in an accident with an automobile driven by an uninsured motorist. He attempted to recover under the uninsured-motorist provision of his father's automobile insurance policy issued by State Farm, which denied coverage on the basis of an exclusion which stated that the uninsured-motorist coverage was inapplicable "To bodily injury to an insured while occupying or through being struck by a land motor vehicle owned by the named insured or any resident of the same household, if such vehicle is not an owned motor vehicle ***." (8 Ill. App. 3d 547, 548.) The policy did not, as in the present case, contain a restrictive endorsement. Indeed, it was assumed by the appellate court that Virgil was an "insured" under his father's policy and that his motorcycle was not an "owned motor vehicle." The only issue for consideration was whether the above exclusion—which, if valid, clearly denied Virgil uninsured-motorist coverage because he was not occupying an "owned motor vehicle"—was rendered null and void by the Illinois Insurance Code. Relying on *Barnes,* the court held that the exclusion conflicted with section 143a of the Insurance Code and thus was rendered null and void by section 442 of the Code:

> "Although we recognize that the facts of *Barnes v. Powell* are distinguishable from the facts at bar, we nonetheless cannot overlook the Supreme Court's statements therein regarding the legislative intent behind Section 143a. The expansive interpretation applied by a majority of that court leads us to conclude that, presented with the issue at bar, our Supreme Court would

interpret Section 143a of the Insurance Code as a direction to insurance companies to provide uninsured motor vehicle coverage for *insureds*,' regardless of whether, at the time of injury, the insureds occupied or operated vehicles declared in the subject policy." (Emphasis added.) 8 Ill. App. 3d 547, 552.

It is clear from the holdings of *Barnes, Doxtater,* and *Goodpasture* and from the language of the statute itself that the legislative intent was to provide extensive uninsured-motorist protection for those who are "insureds" under an automobile liability policy. But neither the statute nor any of these decisions places any restriction on the right of the parties to an insurance contract to agree on which persons are to be the "insureds" under an automobile insurance policy. It is only after the parties designate the "insureds" that the statute and case law become applicable and prohibit an insurance company from either directly or indirectly denying uninsured-motorist coverage to an "insured." Since we hold that in the circumstances presented by this case James Phelan was not an "insured" under his father's policy, section 143a of the Insurance Code and the *Barnes, Goodpasture,* and *Doxtater* cases are not applicable. Additionally, although the Heritage policy issued to William Phelan contained an exclusion very similar to the one at issue in *Doxtater,* a determination of the validity of such an exclusion is unnecessary in deciding this case, and consequently we make no determination as to the correctness of the extension of *Barnes* and *Goodpasture* by the appellate court in *Doxtater.*

We turn now to an analysis of the restrictive endorsement, the meaning of which is the decisive issue in this case. Since the endorsement describes James Phelan as an "operator," appellants urge that "the insurance afforded by the policy [which] shall not apply with respect" to James Phelan refers only to the liability insurance afforded

by the policy. We do not agree that the use of the term "operator" compels such an interpretation. It is well settled that ambiguous provisions in an insurance policy will be narrowly construed against the insurance company *(Barnes v. Powell* (1971), 49 Ill.2d 449, 454), but that principle cannot be used to distort the clear meaning of a provision simply to allow some means of recovery to an injured person who might otherwise receive less than full compensation for injuries caused by another person. "Operator" certainly does not mean one who requires only liability insurance, since "operators" regularly need and use the protection afforded by nonliability provisions, such as medical-payments, property-damage, comprehensive, and uninsured-motorists clauses, which are commonly found in automobile insurance policies. Thus, we cannot agree that the words "insurance afforded" in the endorsement must be read as "liability insurance afforded." Rather, we believe that the endorsement, even when construed liberally in favor of the policyholder, clearly means that none of the insurance coverage of the policy applies with respect to James Phelan when he acts in the capacity of an "operator." We note also that the endorsement makes no reference to the operation of the "insured automobile" or any other particular vehicle, but simply describes James Phelan as an "operator." The plain words of the endorsement leave no doubt that Heritage, in return for the consideration paid by William Phelan, would not agree to undertake the risk of providing any insurance coverage for James Phelan, a teenage driver, when he was the "operator" of any vehicle.

The sole question remaining for resolution is whether James was the "operator" of his automobile at the time of the accident, even though the automobile was stopped at a service station and James was standing beside the vehicle assisting with repairs to a heater hose. Although we have never ruled on this question, there is abundant authority from our appellate courts and other jurisdictions support-

ing our holding that James Phelan was the "operator" of his vehicle at the time of the accident.

*Vesely v. Prestige Casualty Co.* (1972), 4 Ill. App. 3d 726, decided by the Appellate Court for the First District, is directly in point. The automobile insurance policy in question had an endorsement which denied coverage when the insured automobile was being operated by Frank Vesely. An accident occurred when the car was parked with the engine running while Frank Vesely, who had been driving, was in a liquor store purchasing a bottle of liquor. The court held that he was still the "operator" of the car despite his absence at the time of the accident:

"The issue on which this case rests is whether Vesely continued to 'operate' the vehicle at the time of the accident, notwithstanding the fact that he had left the automobile to go into a store. The word 'operate' is not limited to a state of motion produced by the mechanism of the car. Leaving an automobile when its engine is running, while the driver goes into a store—obviously, with the intent of making a quick purchase—is in substance a continued operation of the car by the driver. ***

In the case before us the stop made by Vesely was incidental to the operation of the automobile, and our conclusion is that Vesely was operating the car at the time of the collision." (4 Ill. App. 2d 726, 728.)

In *Stephens v. Cottingham* (1960), 237 S.C. 108, 115 S.E.2d 505, the Supreme Court of South Carolina considered the effect of a tractor insurance policy endorsement excluding coverage if more than two of the three tractors covered were operated at the same time. In deciding that the policy did not provide coverage because all three tractors were in operation, the court observed: "It is true that when the accident happened, one of the other tractors may at that moment have stopped at a service

station for gasoline or the driver may have stopped somewhere for lunch. But we think the tractor continued to be operated within the meaning of the policy during such temporary interruption of the trip. Appellant was not required to show that at the moment of the accident all three trucks were in a state of motion." 237 S.C. 108, 114-115, 115 S.E.2d 505, 508.

In *Liberty Mutual Ins. Co. v. McDonald* (6th Cir. 1938), 97 F.2d 497, the Court of Appeals for the Sixth Circuit considered the application of a Tennessee statute which required insurance coverage for motor vehicles transporting property for hire on Tennessee highways. At the time of the accident which fostered the litigation, the tractor-trailer involved had broken down and was parked along the highway awaiting repairs. The court rejected the contention that the vehicle was no longer being operated: "Appellant further contends that at the time of the collision Tractor No. 18 and trailer were not being 'operated,' in the sense of the statute, since after they had broken down the cargo was removed, and they were simply standing empty on the highway. Without deciding just when the operation of the equipment terminated, it is clear enough that it had not ceased while the unit was still parked on the highway as the result of the disablement." 97 F.2d 497, 498-499; see also *Commonwealth v. Henry* (1917), 229 Mass. 19, 118 N.E. 224; *Hand v. Frazer* (Sup. Ct. 1931), 139 Misc. 446, 248 N.Y.S. 557; *Stroud v. Board of Water Commissioners* (1916), 90 Conn. 412, 97 A. 336; *Maher v. Concannon* (1936), 56 R.I. 395, 185 A. 907; *Todd v. Borowski* (1960), 25 Ill. App. 2d 367; but see, *Oregon Mutual Insurance Co. v. Fonzo* (1970), 2 Wash. App. 304, 469 P.2d 989; *Commercial Insurance Co. v. Rogers* (Tex. Civ. App. 1967), 418 S.W.2d 584.

In attempting to ascertain the meaning of the word "operator" in the restrictive endorsement attached to William Phelan's policy, we find persuasive the conclusions reached in the cases above cited. At the time of his

accident, James Phelan had made a temporary stop at a service station to repair a heater hose. He was in the process of driving to work and intended to complete that trip immediately after the completion of a repair job which can be simply and quickly accomplished by any competent mechanic. He remained in the immediate vicinity of his car, knowing that the repair would take but a few minutes and that he could then drive on to the produce market where he was employed. He was engaged in activities so closely related to the control and actual driving of the car that he still must be considered the "operator" of the vehicle. "Operator" is not synonymous with "driver" and James Phelan remained the "operator" of his automobile even though he was not driving it at the time of the accident. The restrictive endorsement in William Phelan's policy therefore effectively denied un-insured-motorist coverage for James Phelan.

The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH, with whom MR. JUSTICE WARD joins, dissenting:

Mr. Justice Ward and I dissent and are of the opinion that the circuit court correctly dismissed plaintiff's complaint for want of equity.

Insofar as pertinent to this case, the automobile insurance policy contained two separate and distinctly different definitions of the term "insured." Part I of the policy contained the liability coverage agreements and provided that " 'Insured' means a person *** described under 'Persons Insured'," which provided:

"The following are insureds under Part I:
 (a) with respect to the owned automobile,
 (1) the named insured and any resident of the same household,
 (2) any other person using such automobile with the permission of the named insured,

provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) (1) or (2) above;

(b) with respect to a non-owned automobile,
(1) the named insured,
(2) any relative, but only with respect to a private passenger automobile or trailer,

provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b) (1) or (2) above."

Part IV of the policy provided "Protection against uninsured motorists." It contained the following provision:

"The definitions under Part I, except the definition of 'insured,' apply to Part IV, and under Part IV:

'insured' means:

(a) the named insured and any relative;

(b) any other person while occupying an insured automobile; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above."

The endorsement which the majority holds excludes James Phelan from the uninsured-motorist coverage provided in the policy is headed "Restricted Named Operator Endorsement" and refers to him as an "operator." The policy contains no definition of the term "operator."

A comparison of the foregoing definitions of "insured" shows that the status of an "insured" as an

operator of a vehicle was material to the risk assumed by the insurer under part I of the policy and was wholly irrelevant to the liability imposed on the insurer under part IV.

The occurrence out of which this litigation arose did not in any manner involve the insured automobile. The uninsured automobile which James Phelan had driven to the station was not the vehicle which caused his injury. He was struck and injured by a vehicle which, it is undisputed, was an "uninsured automobile" within the definition contained in part IV of the policy. On these facts, whether he was an "operator" is completely irrelevant, and the cases upon which the majority relies deal with a question not presented on this record.

The clear and unequivocal provisions of part IV of the policy imposed liability on plaintiff because James Phelan, a "relative" of its named insured, William Phelan, was "entitled to recover because of bodily injury" from the operator of a vehicle which came within the definition of an "uninsured automobile" contained in part IV of the policy.

The majority agrees "that the legislative intent was to provide extensive uninsured-motorist protection for those who are 'insureds' under an automobile liability policy." (59 Ill.2d at 395.) A common-sense reading of the policy leads to the obvious conclusion that the restrictive endorsement was designed to avoid liability under part I of the policy as the result of the operation of an automobile by James Phelan. To engraft this restriction onto the definition of "insured" contained in part IV results in an erroneous construction of the policy, and serves to defeat the clearly expressed legislative intent in providing for uninsured-motorist coverage.

MR. JUSTICE SCHAEFER, also dissenting:

I concur in what Mr. Justice Goldenhersh has said in dissent. I would add that James Phelan was not an

"operator" of any vehicle if that word is defined, as common sense indicates that it should be, in terms of the risk that the insurance company sought to exclude. That was the risk that came from the 17-year-old boy as the driver of an automobile—not as a person standing beside one.