1997 OK 67

**Stanley F. MAYER, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

No. 88541.

Supreme Court of Oklahoma.

May 20, 1997.

Rehearing Denied Sept. 9, 1997.

Kenneth P. Craig, Moore, and Rex K. Travis and Patricia Travis, Oklahoma City, for Appellant.

Joseph T. Acquaviva, Jr., Oklahoma City, for Appellee.

OPALA, Justice.

¶ 1 The issue we are asked to decide today is whether an explosion occasioned by a bomb put in a parked vehicle affords a predicate for recovery under uninsured motorist coverage. We answer in the negative.

¶ 2 Stanley F. Mayer (insured) sought recovery for loss under the uninsured motorist (UM) provision of his automobile insurance policy with State Farm Mutual Automobile Insurance Company (State Farm or insurer). By its summary judgment for the insurer the trial court ruled that while Mayer's injuries, which resulted from a truck bomb explosion, *arose out of the use* of a motor vehicle and were *causally connected* to that use, the link for causal transportation mode came to be *severed* by the intentional act of the bombing perpetrator.

¶ 3 We hold that because, when harm was inflicted, the uninsured vehicle was used as a *launching pad* for a bomb, there was no requisite connection between Mayer's injuries and the truck's *vehicular use*. The summary judgment for insurer must hence be affirmed.

## I.

### THE ANATOMY OF LITIGATION

¶ 4 On April 19, 1995 Mayer was at work in downtown Oklahoma City when his employer's office building was damaged by a bombing incident which targeted the nearby Alfred P. Murrah Federal Building. Mayer sustained severe bodily injuries. At the time of the explosion Mayer's automobile insurance policy with State Farm included coverage for accidental injury caused by uninsured motorists.[1]

¶ 5 Mayer sued State Farm for $25,000.00, the maximum amount of his coverage under the UM provision. Insurer denied liability and sought summary judgment. By stipulation insured *concedes* that the explosion was caused by an assailant who drove to the Murrah building a rented truck filled with explosives, *then parked the vehicle on the street in front of that building* and detonated the cargo. The trial judge, who ruled the truck was used as a "weapon of lethal destruction" and not as a motor vehicle, gave summary judgment to State Farm. Mayer seeks review, urging that the assailant's *use of the uninsured truck as a vehicle* was integral to the harm-dealing event and the bomb's presence in the truck served to connect the criminal act to the insured's injuries. State Farm argues the use of the rental truck as a "container" for explosives is *dehors* the ambit and intent of the provisions of 36 O.S.1991 § 3636,[2] which govern liability under UM coverage.

1. The pertinent part of the policy coverage in contest provides:
   "SECTION III—UNINSURED MOTOR VEHICLE—COVERAGE U
   "We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. *The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.*
   Uninsured motor vehicle—means:
   1. A land motor vehicle, the ownership, maintenance or use of which is:
   a. not insured or bonded for bodily injury liability at the time of the accident, or
   b. insured or bonded for bodily injury liability at the time of the accident; but
   (1) the limits of liability are less than required by the financial responsibility act of the state where your car is mainly garaged; or
   (2) the insuring company;
   (a) denies coverage; or
   (b) is or becomes insolvent, or

   (3) the limits of liability are less than the amount of the claim of the person or persons making claim and have been used up by payment of judgments or settlement."
   (Emphasis supplied.)

2. The pertinent terms of 36 O.S.1991 § 3636 are:
   "(A) No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person *arising out of the ownership, maintenance or use of a motor vehicle* shall be issued, delivered, renewed, or extended in this state ... unless the policy includes the coverage described in subsection (B) of this section. (Emphasis added.)
   "(B) *The policy ... shall provide coverage ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall not be less than the amounts or limits prescribed for bodily injury

## ¶ 6 II.

### THE EMPLOYMENT OF AN UNINSURED MOTOR VEHICLE AS AN INSTRUMENTALITY OF INJURY WITHOUT A CAUSAL CONNECTION TO ITS USE IN TRANSPORTATION MODE INSULATES THE INSURER FROM UM LIABILITY.

¶ 7 An insured's injuries, to be redressible under UM coverage, must have (1) been caused by an accident and (2) arisen out of the use of an automobile.[3] In first-party uninsured motorist coverage contests between the insured and the insurer, the term 'accident' is viewed from the standpoint of the insured.[4] It can include criminal acts arising from the uninsured vehicle's use.[5] The outer limit of the term "arising out of the use" is not defined by statute.[6] Jurisprudence has supplied the meaning for that phrase. *Subsection B of § 3636 has been understood to give indication of an intent that there be a causal connection between the vehicle's inherent function as a means of transportation and the accidental injuries which are the subject of suit.*[7] Whether the vehicle is used in its transportation mode depends upon the unique circumstances in each case.[8]

¶ 8 Whenever injury is claimed to be the fault of the uninsured motorist, a distinction is drawn between the vehicle's function as the mere *situs* of an accident, and thus *incidental* to the injury (which could have occurred with or without the presence of the vehicle),[9] and those rare instances in which the automobile may be regarded to be itself the harm-dealing instrumentality.[10]

¶ 9 Insured urges that in this case the criminal act is inextricably connected to the "use" of the uninsured truck. But for the vehicle (which the assailant drove to the site) Mayer's injuries would not have occurred.[11]

or death for a policy meeting the requirements of Section 7–204 of Title 47, Oklahoma Statutes...." (Emphasis added.)

3. These two elements are the *sine qua non* of uninsured motorist claims. They are intertwined. *Willard v. Kelley*, 1990 OK 127, 803 P.2d 1124, 1127.

4. *Willard v. Kelley, supra*, note 3 at 1128. Uninsured motorist coverage is to be viewed as "first-party" coverage because it is a promise by the insurer to pay its own insured rather than a third party. *Uptegraft v. Home Insurance Co.*, 1983 OK 41, 662 P.2d 681, 684.

5. *Safeco Insurance Company of America v. Sanders*, 1990 OK 129, 803 P.2d 688, 694. Even if the insured becomes the victim of an *intentional* act, its character may be viewed as *accidental* so long as the harm was not the reasonably foreseeable result of the insured's own willful act or misconduct. *Willard v. Kelley, supra*, note 3 at 1128, n. 6.

6. For the terms of 36 O.S.1991 § 3636, *see* note 2, *supra*.

7. In *Safeco Insurance Company of America v. Sanders, supra*, note 5 at 692, the court applied a two-prong test to determine whether an injury is within UM coverage: (1) the use of the vehicle must be connected to the injury and (2) the use must be related to the transportation function of the vehicle.

8. *Safeco Insurance Company of America v. Sanders, supra*, note 5 at 692.

9. *Safeco Insurance Company of America v. Sanders, supra*, note 5 at 693, n. 10; *See also* Appleman, Insurance Law and Practice, part 37.35, § 5092.55 (1981).

10. In *Safeco Insurance Company of America v. Sanders, supra*, note 5, two people were kidnapped and placed in the trunk of a car. The car was then ignited and the victims died. The court held these events so disconnected from the transportation function of the vehicle that UM coverage was unavailable.

11. Mayer urges that *Willard v. Kelley, supra*, note 3, and *Byus v. Mid–Century Insurance Company*, 1996 OK 25, 912 P.2d 845, are controlling here. In *Willard*, a suspected felon in an uninsured vehicle shot a police officer who had briefly halted the assailant's car. After the shooting, the assailant fled the scene in the car. The court held the jury could find the use of the car and of the gun as transportation-connected if it believed the car and the gun were used to facilitate the assailant's getaway. In *Byus*, a car chase resulted in the shooting of the insured by a passenger in an uninsured vehicle. The case was held to present a jury question because the vehicles involved were in transportation mode when the shooting (accident) occurred.

These two cases are readily distinguishable from Mayer's quest for UM benefits. It is undisputed that here the truck was *not* utilized in its transportation capacity to facilitate a detonation of the explosives. It was used instead as an integral part of the weapon itself.

This view utterly ignores the law's requirement that *the uninsured vehicle be in use as a motor vehicle at the time of injury.*[12] When the explosion occurred (which is the critical point under examination) the criminal actor had *ceased* driving the rental truck and had parked (and presumably departed from) what was then no longer an automobile in use but the catapult for a bomb. *That intentional act of the perpetrator did not call for the use of transportation during the commission of the crime.* The automobile's employment, at the critical time, as a weapon, firebomb or implement of destruction in a manner completely incongruous with its transportation function and without a causal link to locomotion is not within UM coverage.[13] The only claimed transportation connection in this case is the uninsured vehicle's *antecedent* use to transport the explosive materials close to the chosen target. The site's destruction by the truck's contents occurred *after* the vehicle's transportation use had been *abandoned.* The subsequent employment of the truck as a bomb clearly *severed* from the ensuing explosion the requisite transportation nexus to the vehicle.[14] For the purpose of determining insurer's liability due under Mayer's UM coverage at the critical point of insured's injury, the assailant had ceased to be an "operator of a motor vehicle."[15]

## III.

### SUMMARY

¶ 10 The insured's claim, to be redressible under uninsured motorist coverage, must show an injury that (1) was caused by an accident, (2) arose out of the use of the uninsured vehicle and (3) *had a causal connection to the uninsured vehicle's transportation mode.*[16]

¶ 11 The undisputed facts here are that (a) a harm-dealing event had occurred and (b) it arose out of the use of the uninsured truck. The third element for recovery—that of a causal connection between the injuries and the truck's function as a method of transport—is absent. At the time of the explosion the assailant had clearly *abandoned* the truck's vehicular use[17] and *ceased* to be the "operator of a motor vehicle."[18] This *severed* the critical causal link.[19] The actor's transformation of the vehicle, at the critical time, into a bomb catapult made the truck's use thoroughly incongruous with the required transportation mode and placed the loss *dehors* UM coverage.[20]

¶ 12 **THE TRIAL COURT'S SUMMARY JUDGMENT IS AFFIRMED.**

¶ 13 KAUGER, C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and WILSON, JJ., concur.

SUMMERS, V.C.J., concurs in judgment.

WATT, J., concurs by reason of *stare decisis.*

---

12. *Safeco Insurance Company of America v. Sanders, supra,* note 5 at 692.

13. *See* note 10, *supra.*

14. *Safeco Insurance Company of America v. Sanders, supra,* note 5 at 695.

15. The court in *Safeco Insurance Company of America v. Sanders, supra,* note 5 at 696, held that 36 O.S. § 3636 contemplates an active involvement by an "operator" of a UM vehicle in activity related to the *transportation* nature of the vehicle. (For the pertinent language of § 3636, see note 2, *supra.*) *See also Byus v. Mid–Century Insurance Company, supra,* note 11 at 848.

16. *Safeco Insurance Company of America v. Sanders, supra,* note 5 at 690, 692; *Byus v. Mid–Century Insurance Company, supra,* note 11 at 846; *Willard v. Kelley, supra,* note 3 at 1127, 1131.

17. *Safeco Insurance Company of America v. Sanders, supra,* note 5 at 695.

18. *See* note 15, *supra.*

19. *Safeco Insurance Company of America v. Sanders, supra,* note 5 at 695; *Willard v. Kelley, supra,* note 3 at 1131.

20. *See* note 10, *supra.*