1999 OK CIV APP 92

Eugene NARVAEZ, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

No. 92,688.

Court of Civil Appeals of Oklahoma, Division No. 4.

June 22, 1999.

See also, 149 F.3d 1269.

Robert M. Behlen, Oklahoma City, Oklahoma, For Appellant.

Tim D. Cain, Wilson, Cain & Acquaviva, Oklahoma City, Oklahoma, For Appellee.

## OPINION

GOODMAN, P.J.

¶ 1  This appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(1), 12 O.S. Supp. 1998, ch. 15, app. 1, after the trial court's January 27, 1999, order granted judgment to appellee State Farm Mutual Automobile Insurance Company (State Farm) on appellant Eugene Narvaez's (Narvaez) claim for uninsured motorist benefits under a policy issued to Narvaez by State Farm. Upon review of the facts and applicable law, we affirm.

### Standard of Review

¶ 2  Summary judgment is appropriate only when there is no substantial controversy as to any material fact, and one of the parties

is entitled to judgment as a matter of law. The court must also find that reasonable people could not reach different conclusions on the undisputed facts. All inferences to be drawn from the undisputed facts must be viewed in the light most favorable to the party opposing the motion. *Hutchins v. Silicone Specialties, Inc.*, 1993 OK 70, 881 P.2d 64, 66–67; *Erwin v. Frazier*, 1989 OK 95, 786 P.2d 61. Even though there may be multiple issues of disputed fact which would normally preclude summary judgment and would otherwise warrant submission of this matter to a jury, a movant must nevertheless show that, as a matter of law, he may recover. *Mooney v. YMCA of Greater Tulsa*, 1993 OK 33, 849 P.2d 414.

### Facts

¶3 Narvaez was a guest at a La Quinta Inn located in Oklahoma City when he was assaulted on July 2, 1996, in the parking lot. The unknown assailant beat Narvaez, injuring him, and then stole Narvaez's minivan. The minivan was covered by insurance issued by State Farm, and contained uninsured/underinsured motorist coverage. Narvaez made a claim for that coverage, but State Farm denied the claim on the basis the injuries were not caused by an uninsured motorist. Narvaez has no memory of the assault. His last clear memory is using a pay phone at the hotel and being asked by an unknown person to move his minivan from a no-parking zone. His next memory is waking up at Mercy Hospital. There are no evidentiary materials before us suggesting Narvaez was struck by his own vehicle or any part thereof.

¶4 State Farm filed a declaratory judgment action in the United States District Court for the Western District of Oklahoma on October 29, 1996. On July 1, 1997, the federal district court granted State Farm judgment on the issue of whether or not State Farm was required to pay Narvaez the UM benefits, concluding it was not so required. That decision was reversed on appeal by the 10th Circuit Court of Appeals after that court concluded the amount in controversy was insufficient to trigger federal jurisdiction.

¶5 Narvaez then filed suit in Oklahoma County District Court on August 12, 1998. State Farm again denied it owed the UM benefits, and sought summary judgment in its favor on all issues. The Oklahoma County District Court granted said motion in an order filed January 27, 1999. Narvaez appeals.

¶6 The sole issue before us is whether or not Narvaez is entitled to recover UM benefits from his policy when Narvaez was injured during an assault, at the conclusion of which his car was stolen by the assailant. Based on the evidentiary material before us, we can find no evidence to establish that the assailant operated the vehicle at the time of Narvaez's injury. We specifically do not address the remainder of State Farm's defenses.

¶7 In *Mayer v. State Farm Mut. Auto. Ins. Co.*, 1997 OK 67, ¶7, 944 P.2d 288, 290, the Oklahoma Supreme Court enunciated a test to determine whether UM benefits are to be paid for a particular injury.

An insured's injuries, to be redressible under UM coverage, must have (1) been caused by an accident and (2) arisen out of the use of an automobile. [*Willard v. Kelley*, 1990 OK 127, 803 P.2d 1124, 1127.] In first-party uninsured motorist coverage contests between the insured and the insurer, the term 'accident' is viewed from the standpoint of the insured. [*Willard v. Kelley*, supra, note 3 at 1128, *Uptegraft v. Home Insurance Co.*, 1983 OK 41, 662 P.2d 681, 684.] It can include criminal acts arising from the uninsured vehicle's use. [*Safeco Insurance Company of America v. Sanders*, 1990 OK 129, 803 P.2d 688, 694; *Willard v. Kelley*, supra, note 3 at 1128, n. 6.] . . . . *Subsection B of § 3636 has been understood to give indication of an intent that there be a causal connection between the vehicle's inherent function as a means of transportation and the accidental injuries which are the subject of suit.*

¶8 Additionally, there is a requirement that the uninsured vehicle be in use as a motor vehicle at the time of injury. We find this point dispositive of the issue in this case. In *Mayer*, the insured was injured after a truck containing explosives was driven,

parked, and abandoned outside a federal building in Oklahoma City. The court found the insured's injuries from the subsequent explosion occurred after the vehicle's use as a method of transportation had ceased and its role as a "catapult for a bomb" began. Thus the causal link between the criminal actor's operation of the truck and the insured's injuries was severed.

¶ 9 We find the same analysis applies to the facts presented today. Narvaez was assaulted, injured, and robbed of his car keys before his unknown assailant began to operate Narvaez's minivan. There is no evidentiary material before us which suggests Narvaez was injured by the use or operation of his van while it was in the control of the assailant. Rather, Narvaez's injuries occurred prior to the assailant gaining control of the van. Thus, in *Mayer*, the transportation use of the truck ended *before* the injury-producing event, whereas here the transportation use of the van occurred *after* the injury-producing event. We conclude, as a matter of law, Narvaez could not recover under this set of facts, and summary judgment was appropriately granted to State Farm.

¶ 10 Narvaez argues that the court should look at the intent of the assailant to steal—and thus operate—the minivan, and therefore conclude the injuries suffered by Narvaez were encompassed within and incidental to the intent to gain control of the minivan, citing *Sanders* and *Heritage Insurance Company of America v. Phelan*, 59 Ill.2d 389, 321 N.E.2d 257 (1974), cited with approval in *Sanders*. Narvaez claims the assailant effectively became the operator of the vehicle when the assailant engaged in activity intended to facilitate his illicit operation of the minivan, *i.e.*, by assaulting Narvaez to obtain his car keys. Therefore, concludes Narvaez, his injuries were a product of the operation of that vehicle by the assailant.

¶ 11 We disagree. In *Phelan*, the injured party had been operating his vehicle when it experienced mechanical problems. In the course of repairing those problems, Phelan was injured when he was struck by another vehicle. The *Phelan* court concluded he was still operating his vehicle at the time of his injury, despite its temporary inoperability, and had no intention of abandoning his use of that vehicle as a mode of transportation. *Phelan* is distinguishable from the case before us.

¶ 12 Here, Narvaez was the victim of an assault which resulted in his injuries. As either a fortuitous or intended result of that assault, the keys to Narvaez's van were taken and the van was stolen. There is no evidence Narvaez was operating the vehicle when he was assaulted, though there is some evidentiary material suggesting Narvaez was proceeding to get into the van in preparation to operate it. While the end result of the assault may have been to gain control of the vehicle and operate it, Narvaez was nevertheless injured by the assault, which took place prior to the operation of the vehicle. Narvaez simply failed to produce sufficient evidentiary material to permit the legal conclusion that his injury was the result of the operation of his van.

¶ 13 We agree the trial court correctly granted judgment to State Farm on Narvaez's claim of bad faith. State Farm had a reasonable defense to the claim, based on the facts thereof. The general rule is that it is not bad faith for an insurer to resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim. There can be disagreement between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. *Christian v. American Home Assurance Co.*, 1978 OK 141, 577 P.2d 899. The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions. *McCorkle v. Great Atlantic Insurance Co.*, 1981 OK 128, 637 P.2d 583 (1981).

¶ 14 AFFIRMED.

RAPP, J., and TAYLOR, J., concur.