**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 10, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHILD A and CHILD B, by and
through their parents and next friends;
JONATHAN GAITHER, individually;
NICOLE GAITHER, individually,

      Plaintiffs - Appellants,

v.

ALLSTATE INSURANCE
COMPANY,

      Defendant - Appellee.

No. 08-6125
(D.C. No. 08-CV-00145-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BRISCOE**, and **McCONNELL**, Circuit Judges.

      Plaintiffs-Appellants Jonathan and Nicole Gaither, and their two minor

children, appeal from the district court's grant of summary judgment in favor of

Defendant-Appellee Allstate Insurance Company ("Allstate"). The Gaithers

brought claims against Allstate based upon breach of contract for uninsured

motorist coverage and bad faith breach of insurance contract, and the case was

---

      [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

removed to federal court.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

### Background

Plaintiffs-Appellants Jonathan and Nicole Gaither, their two minor children, Child A and Child B, and an additional child stopped at a 7-Eleven store in Moore, Oklahoma, to buy drinks prior to the children's softball game.  Aplt. App. 375.  While Mr. Gaither and two of the children entered the store, Mrs. Gaither and her son, Child B, remained in the car.  Aplt. App. 375.  While in the car, Mrs. Gaither observed an altercation in the store between two police officers and Mr. Roger Ramirez.  Aplt. App. 375-76.  Noting that a family was about to enter the store, Mrs. Gaither exited her vehicle to warn the family not to enter. Aplt. App. 375-76.  While Mrs. Gaither was still outside her vehicle, Mr. Ramirez ran out of the store and grabbed Mrs. Gaither, forcing her into a headlock and putting a gun to her head.  Aplt. App. 376-77.  Mr. Ramirez demanded that Mrs. Gaither take him to the other side of the family's car, and he took the car keys out of Mrs. Gaither's hand.  Aplt. App. 376-77.  Still holding a gun to Mrs. Gaither's head, Mr. Ramirez was unable to unlock the car door and demanded that Mrs. Gaither unlock the vehicle.  During this time, Child B was in the back seat of the car in a car seat.  Aplt. App. 377.  According to Mrs. Gaither, upon her opening the car door, Mr. Ramirez "jumped in the car" and onto her son and attempted to

- 2 -

pull Mrs. Gaither into the vehicle. Aplt. App. 377. After a struggle, Mrs. Gaither was able to free her son from the car, and he ran away from the scene. Aplt. App. 377. Mr. Ramirez then pointed the gun directly at Mrs. Gaither and threatened that he would kill her. Aplt. App. 377-78. After loosening his grip on Mrs. Gaither, she too was able to free herself and run away. Aplt. App. 378. Mr. Ramirez then entered the car from the passenger door, crossed over into the driver's seat, and started the vehicle. Aplt. App. 378, 381. He then drove away and eventually crashed. Aplt. App. 378.

At the time of the incident, the Gaithers were insured by Allstate under an Auto Insurance Policy. Aplt. App. 70-89. The Gaithers filed a claim with Allstate under their policy's Medical Payments Coverage, Collision Coverage, and Uninsured Motorist ("UM") Coverage. They claimed compensation for property damage to the vehicle, physical injuries suffered by Mrs. Gaither and Child B resulting from the confrontation with Mr. Ramirez, and emotional distress of all family members. Allstate paid for the property damage under the Collision Coverage provision. Aplt. App. 68. As alleged by Allstate, Allstate also paid medical bills totaling $15,049.80, which were submitted by the Gaithers under the Medical Payments coverage of the policy. Aplt. App. 35-36, 101-11, 112-24. Allstate did not pay out any claims under the UM provision of the policy, a decision that was partially based on legal advice obtained by Allstate regarding UM coverage under Oklahoma law. Aplt. App. 125-29. Allstate sent

the Gaithers a letter denying UM coverage on February 6, 2006. Aplt. App. 128.

The Gaithers initially filed suit against Allstate in Cleveland County, Oklahoma, on June 20, 2006. Aplt. App. 52-54. Specifically, the Gaithers claimed that Allstate breached its insurance contract relating to Medical Payment coverage and UM coverage, and they also asserted a claim of bad faith. Aplt. App. 52-54. On May 21, 2007, Allstate filed a motion for partial summary judgment, arguing that UM coverage did not apply as a matter of Oklahoma law. Aplt. App. 130-40. While that motion was pending, the Gaithers filed a motion to voluntarily dismiss the action without prejudice. Aplt. App. 141. On November 28, 2007, under the guidance of new counsel, the Gaithers filed a second suit against Allstate in Cleveland County, asserting the same claims from the prior suit. Aplt. App. 12-14. Allstate properly removed the action to federal court on February 8, 2008, Aplt. App. 9-11, and on April 3, 2008, Allstate filed substantially the same motion for summary judgment as it had in the prior action, Aplt. App. 24-51.

In response, the Gaithers filed a motion for extension of time to respond to the motion for summary judgment, seeking a 60-day extension for the purpose of conducting discovery. Aplt. App. 142-46. On April 24, 2008, the district court denied the request for a sixty day discovery extension, but granted a twenty day extension for the Gaithers to file a response to the summary judgment motion. Aplt. App. 253-54. The next day, the Gaithers filed a motion to amend, seeking

- 4 -

leave to add Mr. Ramirez as a defendant. Aplt. App. 255-64. On May 6, 2008, the district court denied the motion, concluding that Plaintiffs were dilatory in seeking joinder. Aplt. App. 312-15. After the Gaithers filed a response to Allstate's motion for summary judgment, the district court granted summary judgment in favor of Allstate. Gaither v. Allstate Ins. Co., No. CIV-08-145-R, 2008 WL 2116935, at *2-3 (W.D. Okla. May 19, 2008). First, the district court concluded that the injuries suffered by the Gaithers regarding the incident with Mr. Ramirez did not "arise out of the . . . use of an uninsured auto," thus falling outside the scope of UM coverage. Id. at *2. The court further granted summary judgment in favor of Allstate on the Gaithers' bad faith claim. Id. at *3. The court then concluded that Plaintiffs failed to raise any genuine issue of material fact relating to the Medical Payments coverage. Although the Gaithers had submitted bills that allegedly remained unpaid, the court found that they failed to demonstrate how the bills related to treatment regarding the injuries incurred on September 18, 2005. Id. at *2. The Gaithers subsequently appealed the denial of their motions to amend and for an extension of time, and the district court's grant of summary judgment in favor of Allstate. Aplt. App. 468-72.[1]

---

[1]     Although the Gaithers appealed all decisions by the district court, including the Medical Payments coverage claim, they have not briefed that issue on appeal, thus the argument is waived. See Dubbs v. Head Start, Inc., 336 F.3d 1194, 1202 n.4 (10th Cir. 2003).

Discussion

The Gaithers raise four issues on appeal. First, they argue that the district court abused its discretion in denying their motion to amend seeking leave to add Mr. Ramirez as a defendant. Second, they argue that they are entitled to UM coverage and that the district court improperly granted summary judgment in favor of Allstate regarding the denial of UM coverage for their injuries. Third, they argue that the district court improperly denied the motion for an extension of time for the purpose of conducting discovery. Fourth, the Gaithers contend that the district court improperly granted summary judgment on their bad faith claim. For the reasons set forth below, we affirm the district court on all issues.

A. The Denial of Plaintiffs' Motion to Amend

We review a denial of a motion to amend for an abuse of discretion. See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1288 (10th Cir. 2008); Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007). Under this standard, we will not reverse the district court's determination absent "'a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting McEwen v. City of Norman, 926 F.2d 1539, 1553-54 (10th Cir. 1991)). Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave to amend a complaint shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "Refusing leave to

- 6 -

amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993); see Duncan v. Manager, Dep't of Safety, City & County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005).

The Gaithers filed a motion to amend their complaint seeking leave to add an additional party defendant, Mr. Ramirez, who they claim was responsible for the injuries entitling them to UM coverage. Aplt. App. 255-64. The Gaithers claimed that they only sought to add Mr. Ramirez after they discovered that he was not judgment-proof. Aplt. App. 257, 270. In its response to the Gaithers' motion, Allstate claimed the Gaithers' intent in adding Mr. Ramirez was to destroy diversity, was dilatory, would prejudice Allstate, and would be futile. Aplt. App. 297-311.

The district court noted that permitting Mr. Ramirez to join the suit would defeat diversity jurisdiction, as Mr. Ramirez was a citizen of Oklahoma. Given that the motion to amend came "closely on the heels" of Allstate's motion for summary judgment, the court indicated that such timing "raises the suspicion, to say the least, that the motion was filed for the purpose of defeating the Court's subject matter jurisdiction and avoiding the effect of this Court's Order" denying Plaintiffs' motion for an extension of time to conduct discovery. Aplt. App. 313. Furthermore, the court found Plaintiffs' claim that they only recently discovered

Mr. Ramirez's financial situation unpersuasive. Aplt. App. 313. Thus, the court concluded that Plaintiffs had been dilatory in seeking joinder and therefore denied the motion to amend. Aplt. App. 313-14. The court additionally noted that the amendment would largely be futile because the statute of limitations had run on nearly all claims that could be brought by Plaintiffs against Mr. Ramirez, save the claims of Child B, a minor, for whom the statute has not yet begun to run. Aplt. App. 314. Although the court later recognized that its finding that most of the claims were time-barred may have been error, it declined to change its prior denial of the motion to amend, reasoning that Plaintiffs could still file suit against Mr. Ramirez in state court. Gaither, 2008 WL 2116935, at *3,

On appeal, Plaintiffs argue that the district court abused its discretion in denying the motion to amend. Plaintiffs primarily argue that they were entitled to add Mr. Ramirez because no date for amendment had yet been set by a scheduling order and they are entitled to have their claims heard in one action. Plaintiffs suggest that if they had been able to proceed to a status conference, such conference would have been the proper time and place to establish a deadline to amend parties. Aplt. Br. 9-10. Thus, they argue, because they had not reached that point in the litigation, they were entitled to amend their complaint freely to add Mr. Ramirez. Furthermore, they contend that the amendment would not be futile, asserting that the statute of limitations had not yet run on their claims against Mr. Ramirez, and that the district court improperly denied the motion

- 8 -

believing that most of their claims were time-barred. Aplt. Br. 14-15.

Plaintiffs had several opportunities to amend their complaint to add Mr. Ramirez. They could have considered doing so in their first case brought in state court, which was pending for more than a year. Aplt. App. 313. They could have done so at the outset of filing their second case. Aplt. App. 313-14. Instead, they waited until the day following the court's denial of their motion for an extension of time and while Allstate's motion for summary judgment was still pending.

It was clearly within the court's discretion to find that the motion to amend was dilatory. See, e.g., First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1133 (10th Cir. 1987). Although Plaintiffs rely on Keel v. MFA Ins. Co. to argue that they are entitled to join a tortfeasor in an action against the insurer, Keel maintains that joinder is still within the discretion of the trial court after determining that no prejudice will result. 553 P.2d 153, 158-59 (Okla. 1976). Here, the district court found that there was no prejudice to Plaintiffs by not joining Mr. Ramirez. Aplt. App. 314. The resolution of issues regarding UM coverage would require a separate inquiry from that required to determine Mr. Ramirez's tort liability for Plaintiff's physical injuries. Additionally, Plaintiffs may still file suit against Mr. Ramirez in state court, since the statute of limitations had not run on all claims.[2] The district court also noted that Allstate

---

[2] Even if the district court was initially incorrect in assessing the statute of limitations on Plaintiffs claims against Mr. Ramirez, it declined to adjust the
(continued...)

would be prejudiced if the motion to amend was granted, because of the delay to the resolution of their motion for summary judgment (which they had now filed twice). Aplt. App. 314. Thus, the district court, after considering all factors relevant to the motion to amend, acted within its discretion by denying the motion.

>B. <u>The Grant of Summary Judgment in Favor of Allstate Regarding UM Coverage</u>

We review the grant of a motion for summary judgment de novo, and apply the same standard as the district court. <u>T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County, Kan.</u>, 546 F.3d 1299, 1306 (10th Cir. 2008). Summary judgment is appropriate when "there is no genuine issue as to any material fact and [therefore] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "we ask ourselves whether, by a preponderance of the evidence, the moving party has established that it is entitled to a favorable verdict." <u>Gross v. Hale-Halsell Co.</u>, 554 F.3d 870, 875 (10th Cir. 2009) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)). In this diversity action, we apply the substantive law of the forum state, Oklahoma. <u>See</u> <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938).

>1. <u>The Allstate Insurance Policy</u>

---

[2](...continued)
ruling after recognizing the potential error. Whether Plaintiffs had a single claim or all claims still available to them, they still would not likely be prejudiced by having to bring a separate action in state court.

Plaintiffs' insurance policy with Allstate allowing for UM coverage

provides that Allstate will

> pay damages which an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of: bodily injury sustained by an insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance, or use of an uninsured auto.

Aplt. App. 81. The district court found that it was undisputed that Plaintiffs

Nicole Gaither and Child B sustained injuries, and that such injuries were caused

by an "accident." Gaither, 2008 WL 2116935, at *2. The district court however,

found that the Gaithers' injuries did not "arise out of the . . . use of an uninsured

auto." Id. Based upon this finding, the district court granted summary judgment

in favor of Allstate. Id.

The facts clearly establish that Plaintiffs Nicole Gaither and Child B

sustained physical injuries. Mrs. Gaither suffered neck and shoulder sprains, as

well as bruising on her arms and legs. Aplt. App. 382. Child B suffered bruising

after Mr. Ramirez fell on him when he was sitting in the vehicle. Aplt. App. 383.

Furthermore, the injuries suffered were caused by an "accident." Under

Oklahoma law, an accident is viewed from the standpoint of the insureds and can

include criminal acts. Mayer v. State Farm Mut. Auto. Ins. Co., 944 P.2d 288,

290 (Okla. 1997). Therefore, Mr. Ramirez's acts do constitute an "accident"

under the policy. Thus, the primary issue we must address is whether there are

any facts sufficient to support a finding that the injuries suffered arose out of the

<u>use</u> of the automobile.

## 2. <u>Oklahoma Law on UM Coverage</u>

Plaintiffs claim that the district court erred in finding that the injuries did not arise out of the use of the automobile. Oklahoma law requires UM coverage for injuries sustained by an insured when such injuries (1) were caused by an accident, and (2) arose out of the "ownership, maintenance or use of a motor vehicle." 36 Okla. Stat. Ann. § 3636; <u>see</u> <u>Mayer</u>, 944 P.2d at 290. In <u>Safeco Insurance Co. of America v. Sanders</u>, the Oklahoma Supreme Court analyzed the meaning of the language in Section 3636, and announced a two-part test to be applied when determining coverage under UM policies. 803 P.2d 688, 692 (Okla. 1990). Specifically, <u>Safeco</u> requires the following inquiry: (1) whether "the use of an uninsured motor vehicle is related to its transportation nature," and (2) whether the injuries alleged are "connected to that use." <u>Id.</u> at 694. When both of these elements are present, then the use of the vehicle and the injury are said to be causally connected, requiring UM coverage. <u>Id.</u> The Oklahoma Supreme Court further discussed this test in <u>Mayer</u>, in which the court distinguished between cases where the vehicle is "the mere situs of an accident" and "those rare instances in which the automobile may be regarded to be itself the harm-dealing instrumentality." <u>Mayer</u>, 944 P.2d at 290-91 (finding no UM coverage because the "intentional act of the perpetrator did not call for the use of transportation during the commission of the crime" when the defendant used a truck as the

- 12 -

launching site for a bomb).

### 3. The Transportation Use of the Automobile During the Gaither Assault

As noted above, the injuries sustained by Nicole Gaither and Child B resulted from an unprovoked attack by Mr. Ramirez, as he attempted to steal the Gaithers' vehicle. Aplt. App. 375-78. Mr. Ramirez was attempting to escape the police when he attacked the Gaithers, and he used a gun to facilitate his theft of the vehicle. Aplt. App. 376-78. At the time of the attack, the car was parked and was not running. Aplt. App. 382. In fact, Mr. Ramirez did not start the car until after Nicole and Child B had fled the scene. Aplt. App. 380-81.

The Gaithers first argue that the injuries arose out of the use of the automobile because it was the "dangerous instrument which started the chain of events leading to their injury." Aplt. Br. 21. They contend that the injuries arose directly from a series of events that all facilitated Mr. Ramirez's escape from the police. Aplt. Br. 19-21.[3] Citing Willard v. Kelley, they argue that the district court incorrectly found that the injuries did not arise out of the use of the vehicle

---

[3] Plaintiffs cite Okla. Farm Bureau Mut. Ins. Co. v. Mouse, 268 P.2d 886 (Okla. 1954). Mouse introduced the chain of events test later applied in Safeco, and found that the transportation use of a vehicle was implicated when injuries resulted from "something physically attached to or immediately connected in some manner with the motor vehicle or its operation." Id. at 889. In Mouse, a truck driver hauling a combine was injured when he attempted to free a portion of the combine which had became lodged under a bridge. Id. at 887. Mouse has little application to the present facts because no physical part of the Gaithers' vehicle or any item connected thereto caused their resulting injuries.

because the car was not in motion. Aplt. Br. 22. In <u>Willard v. Kelley</u>, the court found that UM coverage may apply where a police officer was shot by a suspected felon in an uninsured vehicle. 803 P.2d 1124, 1129-32 (Okla. 1990). There, the officer had been chasing the suspected felon, who was eventually stopped after colliding with two other vehicles. Immediately after the collision, while the car was <u>still</u> <u>running</u> and in gear but not moving, the driver turned around and shot the officer. <u>Id.</u> at 1131. The shooter then used the car to flee the scene. <u>Id.</u> The court held that summary judgment was not proper because of factual questions regarding whether the incident was considered an "accident" under the policy, and whether the shooting and the use of the vehicle were "inextricably connected in purpose" to the shooter's ongoing getaway. <u>Id.</u> at 1131-32. In further support, the Gaithers also cite <u>Byus v. Mid-Century Ins. Co.</u>, 912 P.2d 845, 847 (Okla. 1996). In <u>Byus</u>, the court found that there were genuine issues of material fact as to whether a drive-by shooting, where the passenger in a <u>moving</u> vehicle fired a gun and then used the car as a means of escape, constituted a transportation use of the vehicle, and whether the act constituted an independent, intervening cause. <u>Id.</u>

Willard and <u>Byus</u> are clearly distinguishable. Even though the vehicle was not technically in motion in <u>Willard</u>, it was running and in gear, and the shooter had already been operating the vehicle as a means of escape immediately prior to shooting the officer. <u>Willard</u>, 803 P.2d at 1131. <u>Byus</u> involved a drive-by

- 14 -

shooting where the vehicle was in motion at the time of the injury; thus the question for the jury became whether the transportation use of the vehicle caused the injuries. Byus, 912 P.2d at 847. In both cases, the causal connection regarding the use of the vehicle was a fact in issue, and so was the question of an independent, intervening cause. Furthermore, Mayer, which was decided after Willard, clearly states that the vehicle must be "in use as a motor vehicle at the time of the injury." 944 P.2d at 291.

Here, there are no facts to suggest that "the use of an uninsured motor vehicle is related to its transportation nature," as required by Safeco and Mayer. Safeco, 803 P.2d at 694; Mayer, 944 P.2d at 290-91. Unlike in Willard and Byus, Mr. Ramirez had not yet even occupied the Gaithers' vehicle, except for his jumping into the car in an effort to steal it. Aplt. App. 377-78. It is clear that Mr. Ramirez demonstrated no control over the operation of the vehicle prior to or during his assault on the Plaintiffs. At the point Mr. Ramirez finally did assert control over the vehicle by starting the car, the assault had ended and both Nicole and Child B were no longer in or near the car. Aplt. App. 380, 382. Although it is true that Mr. Ramirez assaulted the Gaithers in his efforts to steal the car as a means of escaping the police, the injuries here are not so "inextricably connected in purpose" to facilitate an ongoing escape as they were in Willard. 803 P.2d at 1131. Just as the court in Mayer concluded that the injuries were not linked to the use of the vehicle because its use had "ceased" once the car had been parked

- 15 -

and set up as the launching site for the bomb, here the transportation use of the vehicle had not yet begun at the time injuries occurred. Mayer, 944 P.2d at 291.

An Oklahoma Court of Appeals decision has reached the issue in a similar case that supports the conclusion that the Gaithers are not entitled to UM benefits. In Narvaez v. State Farm Mut. Auto. Ins. Co., 989 P.2d 1051 (Okla. Ct. App. 1999), the court considered whether a plaintiff had UM coverage for injuries sustained during an assault in a hotel parking lot prior to the assailant's theft of the plaintiff's vehicle. Id. at 1052. The court concluded that, because there was no evidence "to establish that the assailant operated the vehicle at the time of Narvaez's injury," the plaintiff was not entitled to UM benefits. Id. at 1052-53. Therefore, in light of the foregoing, we find that the district court properly granted Allstate's motion for summary judgment regarding the denial of UM coverage.

C.    The Denial of Plaintiffs' Motion for an Extension of Time to Conduct Discovery

The Gaithers claim the district court erred in denying their motion for extension of time to respond to Allstate's motion for summary judgment. Aplt. App. 253-54. The district court construed Plaintiffs' motion as a Rule 56(f) motion. Thus, we review a district court's ruling on a Rule 56(f) motion for an abuse of discretion. Garcia v. U.S. Air Force, 533 F.3d 1170, 1179 (10th Cir. 2008). "'A party seeking to defer a ruling on summary judgment under Rule

- 16 -

56(f) must file an affidavit that explains why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts.'" Id. (quoting Libertarian Party of N.M. v. Herrera, 506 F.3d 1303, 1308 (10th Cir. 2007)) (internal brackets and quotation marks omitted); see Trask v. Franco, 446 F.3d 1036, 1042 (10th Cir. 2006). A party may not "simply stat[e] that discovery is incomplete," but must instead "'state with specificity how the additional material will rebut the summary judgment motion.'" Libertarian Party of N.M., 506 F.3d at 1308-09 (quoting Ben Ezra, Weinstein & Co. v. Am. Online Inc., 206 F.3d 980, 987 (10th Cir. 2000)); see also Garcia, 533 F.3d at 1179.

The district court did not abuse its discretion in denying Plaintiffs' motion because Plaintiffs failed to "identify any specific facts which would create a genuine issue of material fact." Libertarian Party of N.M., 506 F.3d at 1308 (emphasis added); see also Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc., 52 F.3d 901, 904-05 (10th Cir. 1995). Although Plaintiffs did mention in their motion that they sought to depose several individuals to address the UM coverage and bad faith claim, the district court concluded that the legal questions at issue regarding UM coverage and the bad faith claim could be resolved almost exclusively on the undisputed facts in Nicole Gaither's statement. Aplt. App. 254. It was not an abuse of discretion for the district court to find that they did not sufficiently indicate with specificity how the requested discovery was tailored

- 17 -

to facts material to the resolution of the summary judgment motion.

D.    The Grant of Summary Judgment Regarding the Bad Faith Claim

The Gaithers further argue that, because the district court did not allow discovery, the district court erred in granting Allstate's motion for summary judgment on their claim of bad faith. As noted above, we review a district court's grant of summary judgment de novo. T-Mobile Cent., LLC, 546 F.3d at 1306.

In Oklahoma, all insurers owe their insureds an implied "duty to act fairly and in good faith." Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994) (citing Christian v. Am. Home Assurance Co., 577 P.2d 899 (Okla. 1977)). A bad faith cause of action, however, "will not lie where there is a legitimate dispute" over the sufficiency of the insured's claim. Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla. 1984). Although "a legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith," Timberlake Constr. Co., v. U.S. Fid. & Guar. Co., 71 F.3d 335, 343 (10th Cir. 1995), to establish a claim of bad faith, "the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim," Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993) (citing McCoy v. Okla. Bureau Mut. Ins. Co., 841 P.2d 568, 572 (Okla. 1992)).

There was a legitimate dispute over whether UM coverage would apply to Plaintiffs' claim. Moreover, upon finding that, as a matter of law, UM coverage

- 18 -

is not available to Plaintiffs, no issue of fact remains that could properly be sent to a jury. Because there was a legitimate dispute over coverage, as is confirmed by this court's finding that no UM coverage is available, we affirm the district court's grant of Defendant's motion for summary judgment.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge